621 So.2d 460 (1993)
Joanne B. CUILLO, Petitioner,
v.
Robert S. CUILLO, Respondent.
No. 93-0725.
District Court of Appeal of Florida, Fourth District.
April 1, 1993.
Order Denying Rehearing May 19, 1993.
*461 Ronald Sales of the Law Office of Ronald Sales, P.A., West Palm Beach, for petitioner.
Joel M. Weissman of Weissman and Manoff, P.A., West Palm Beach, for respondent.
KLEIN, Judge.
By petition for writ of common law certiorari, the wife seeks review of an order requiring her and her former lawyer to answer questions which she claims are protected by the lawyer-client privilege. We grant review and quash the order.
The parties were married in 1987 after executing an antenuptial agreement. The wife filed this dissolution action and seeks to invalidate the agreement because (1) the husband misrepresented his finances, and (2) he promised her he would not enforce the agreement.
The wife's lawyer when the agreement was negotiated and signed was Sidney Dubbin. The order which is the subject of this review requires the wife and her former lawyer to answer discovery questions as follows:
Any conversations which Dubbin had with the wife's lawyer, Ronald Sales, (hereinafter the wife's lawyer) recently regarding whatever Dubbin might know about the case is fair game for inquiry because it is not privileged. Dubbin shall answer questions about this conversation where the wife's lawyer spoke to him about what he knew about the case or the agreement. Those are not privileged and can and shall be answered.
* * * * * *
The wife shall answer any questions put to her regarding conversations she had with Dubbin prior to the signing of the agreement or with Dubbin in her lawyer's presence after the signing of the agreement or with Dubbin in the presence of third parties, because none of those conversations are privileged or the privilege must be waived by the wife for her to maintain the claims that she makes to the invalidity of the agreement. She can choose to stand on the privilege. The court cannot waive it or require her to speak but if she chooses to continue to stand on the privilege that is being asserted, then the court must consider and may very well have to strike her claims that the antenuptial agreement is invalid.
The husband first argues review is premature since the trial court's order gives the wife the option of withdrawing her claims regarding invalidity of the antenuptial agreement as an alternative to revealing lawyer-client discussions. This argument is unconvincing because the wife may feel coerced to disclose this confidential information in order to litigate her case, and it would not be reparable by final appeal. Moreover, being deprived of a claim or defense is usually the alternative (as a sanction) of not disclosing confidential information under a court order.
In contending that he is entitled to this information, the husband relies on Savino v. Luciano, 92 So.2d 817, 819 (Fla. 1957). In that case plaintiff sued defendant for an accounting of money owed under an employment agreement, and defendant alleged as an affirmative defense and counterclaim that an audit prepared by a CPA reflected that plaintiff had embezzled funds. When plaintiff attempted to discover the audit information from the CPA he was met with the claim of accountant-client privilege. Our Supreme Court held that *462 there was a waiver of the privilege under those circumstances, stating:
And when a party has filed a claim, based upon a matter ordinarily privileged, the proof of which will necessarily require that the privileged matter be offered in evidence, we think that he has waived his right to insist, in pretrial discovery proceedings, that the matter was privileged.
The essence of the holding in Savino was that since the defendant would be relying on the CPA's audit to prove his defense and counterclaim, the privilege normally associated with this information was waived. We do not think the information the husband is seeking in the present case rises to the level of that in Savino. In the present case the wife claims that at the time the agreement was executed the husband misrepresented his finances and promised her he would not enforce the agreement. These claims are not based on privileged information. They can be proved without resort to communications between the wife and her lawyer at the time.
The husband argues that what went on between the wife and her lawyer at the time would be relevant to what she knew or relied on regarding his representations of his finances. While the wife may have acknowledged to her lawyer that she knew the true financial picture, we do not think discovery of this type of information is authorized by Savino, 92 So.2d at 817, or section 90.502(4)(a), Florida Statutes (1991), which says there is no lawyer-client privilege when:
[t]he services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud.
In Skorman v. Hovnanian of Fla., Inc., 382 So.2d 1376 (Fla. 4th DCA 1980), a contract for sale of real estate was subject to certain contingencies, which allegedly did not occur, resulting in litigation. The seller moved to produce all correspondence between the buyer and the law firm representing buyer when buyer entered into the contract, which the trial court granted. This court quashed the order and held this information was privileged. We see no distinction between Skorman and the present case. In either situation there is a possibility that the credibility of a party could be impeached by conversations between the party and counsel when the contract was negotiated. The fact that privileged communications occur in the course of a transaction which is later litigated does not eliminate the privilege. Florida Mining & Materials Corp. v. Continental Casualty Co., 556 So.2d 518 (Fla. 2d DCA 1990).
The order is quashed insofar as it requires the wife to answer questions about her conversations with Dubbin, or insofar as it requires that Dubbin answer questions about his conversations with wife's trial lawyer. This opinion does not, of course, pertain to any conversations which would not have been privileged in the first place as, for example, where they occurred in the presence of disinterested third persons.
WARNER, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, Judge, specially concurring.
Obviously, a prospective spouse consults with an attorney before entering into a prenuptial agreement expressly to get advice and counsel as to whether the party should do so. If we were to hold categorically that the consultations between the prospective spouse and counsel were not privileged  i.e., that the other spouse could discover these discussions in later dissolution of marriage proceedings  then the entire purpose of the consultation would be lost. If lawyers and prospective spouses knew that their private consultations were discoverable, candor might be sacrificed and advice tempered. Hence I start out assuming that the privilege protects their consultations and await some showing, lacking here, that the privilege is otherwise inapplicable or has been waived.
*463 If the purpose of this husband[1] in calling the lawyer who consulted with his prospective wife as to the prenuptial agreement is to show that the lawyer advised her to sign the subject agreement because it was fair, then that disclosure is covered by the privilege. If, on the other hand, the purpose in calling this witness is to show that the future husband made a fair disclosure of his financial condition to her lawyer, that is not covered by the privilege and the lawyer can be forced to testify as to what the bridegroom disclosed. Unfortunately, the order compelling discovery under review in this case is not limited by its terms to the latter; it includes the former as well.
To justify the order, the husband argues that he has the right to determine if she was advised that she had the right before agreeing to seek independent financial advice. Presumably, that in turn is tied to her attempt to set the agreement aside as making insufficient provision for her. Frankly, I confess to having some difficulty in understanding how the courts ever got into the business of deciding whether a prenuptial agreement makes sufficient provision for one spouse.
In Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962), the court held that if such an agreement is not fair and reasonable then the issue turns on whether the other spouse (in that case the husband) had made a "full and frank disclosure" of his property. In the early 1970s, the legislature adopted what is now codified as section 732.702(2), Florida Statutes (1991), which provides:
Each spouse shall make a fair disclosure to the other of his or her estate if the agreement * * * is executed after marriage. No disclosure shall be required for an agreement * * * executed before marriage. [e.s.]
In Estate of Roberts v. Roberts, 388 So.2d 216 (Fla. 1980), the court held:
The rule announced in Del Vecchio was legislatively changed by that part of section 732.702(2) which provides: "No disclosure shall be required for an agreement, contract or waiver executed before marriage."[2] [e.o.]
In rejecting the wife's contention that the statute had the effect of denying her access to the courts, the court said:
The legislature has not abolished the wife's right to sue; it has only altered one of the elements that the court may consider in determining the validity of the antenuptial agreement. Compare Abdin v. Fischer, 374 So.2d 1379 (Fla. 1979). The right to have an antenuptial agreement set aside still exists. For example, if a wife were able to show that her signature on such an agreement had been coerced or otherwise improperly obtained or that she was incompetent at the time she signed, section 732.702(2) would not bar her challenge to the validity of the agreement.
388 So.2d at 217.
I wonder how judges can continue to test prenuptial agreements for financial reasonability in the face of this statute as construed in Roberts. Unless the agreement provides absolutely nothing for the spouse in the event of divorce, I think that the courts should leave fairness and reasonability to the contracting parties  who are, after all, the only persons who can really say whether the agreement was truly fair.[3] *464 As long as we continue to allow unhappy spouses to attack the fairness and reasonability of the prenuptial agreement's provisions in the dissolution of marriage setting, we must expect that lawyers will seek to make inquiries of this kind. We are thus forced to permit certiorari review of orders such as here that allow inquiry into the prospective spouse's advice from a lawyer at the time of contracting.
Therefore I join in Judge KLEIN's opinion.

ON PETITION FOR REHEARING
PER CURIAM.
The petition for rehearing is hereby denied.
WARNER and KLEIN, JJ., concur.
FARMER, J., concurs specially with opinion.
FARMER, Judge, specially concurring.
I join in the court's denial of the "petition" for rehearing. I take the opportunity, however, to recast the ending of my special opinion concurring in the court's decision on the merits. The original final paragraph of my opinion should be deleted and the following substituted in its place.
Nevertheless, in Weintraub v. Weintraub, 417 So.2d 629 (Fla. 1982), the court held that section 732.702(2) does not apply outside probate and overruled Del Vecchio. The court explained its decision in Weintraub by saying that Del Vecchio "was designed to protect a prospective spouse of modest means from contracting away valuable rights." Weintraub, 417 So.2d at 631.
I wonder about the wisdom of having judges test prenuptial agreements for financial adequacy. Why should the law be concerned about anyone, including a prospective spouse, "contracting away valuable rights?" I had always supposed that the ability to "contract away valuable rights" was at the heart of the freedom to contract in the first place. Unless the agreement provides in the event of divorce absolutely nothing for a spouse wholly without income or the prospect of ever getting any, I think that the courts should leave financial adequacy to the contracting parties  who are, after all, realistically the only ones who can possibly answer the subjective test of adequacy.
As long as we continue to allow unhappy spouses to attack the "fairness and reasonability" of a prenuptial agreement in the dissolution of marriage setting, however, we must necessarily expect that lawyers will seek to make inquiries of the kind involved here. We are thus forced to permit certiorari review of orders that allow inquiry into the prospective spouse's advice from a lawyer at the time of contracting.
Therefore I join in Judge KLEIN's opinion.
NOTES
[1] In this dissolution case, he has asserted a prenuptial agreement to govern the division of property, alimony and other such matters, while she has in turn pleaded that her agreement was induced through his misrepresentations and that he also agreed not to enforce it against her. She alleges in essence that the provisions made for her by the agreement are not fair.
[2] Concededly, both Roberts and Del Vecchio involved a claim by surviving spouses that those prenuptial agreements were unenforceable, and section 732.702 is contained in that part of the Florida Statutes dealing with decedent's estates and intestate succession. That may be true, but two reasons suggest that the statutory and decisional rule is also applicable to dissolution of marriage proceedings: (1) the actual text of section 732.702(2) is broad enough to apply literally to such proceedings; and (2) there is no good reason to believe that the legislature really intended to have a different rule apply to prenuptial agreements in divorce cases than applies in probate cases.
[3] In the sense in which I use it, the term "fair and reasonable" means merely that: whether some provision was made for the spouse in the event the marriage is terminated. That is not the same thing as whether the provision is "financially adequate." That concept, too, is something that only the parties can answer at the time of contracting. In other words, if the provision is financially inadequate, the only remedy is not to enter into the agreement.