663 So.2d 1370 (1995)
Jack LONG, Petitioner,
v.
Larry L. MURPHY, etc., et al., Respondents.
No. 95-1668.
District Court of Appeal of Florida, Fifth District.
December 1, 1995.
Ronald P. Weil and Lawrence D. Goodman of Aragon, Martin, Burlington, Weil & Crockett, P.A., Miami, for Petitioner.
Tucker H. Byrd of Winderweedle, Haines, Ward & Woodman, P.A., Orlando, for Respondents Larry L. Murphy, LM Motors, Inc., d/b/a Trail Lincoln-Mercury Dealership, Alan Murphy, and Dennis Murphy.
*1371 No Appearance for Respondents Robert A. Leventhal and Leventhal & Slaughter, P.A.
W. SHARP, Judge.
Long, the plaintiff in a lawsuit brought against Larry Murphy and others involved in a Ford dealership for fraud and misrepresentation, and against Leventhal and his law firm for malpractice,[1] seeks review by way of common-law certiorari of the trial court's order compelling discovery. The order requires him to disclose all of his communications with attorneys C.J. Smith and Robert A. Leventhal about "the matters which are the subject of this action." Long asserts the attorney-client privilege. We agree Long has not waived the privilege in this case, and issue the writ.
Long's suit alleges Murphy, through fraud and other illegal conduct, forced him to relinquish his fifty-percent interest in a Lincoln-Mercury automobile dealership, LM Motors, Inc. He alleged Ford Motor Company originally awarded the dealership to LM because of Long's status as an African-American, and his experience in the automobile business. This dealership was earmarked to be owned by a minority person, based on Ford's goal to promote minority ownership of Ford dealerships. At the time Long became involved in the dealership and was negotiating contracts to own a fifty percent interest in it, he was represented by attorney Smith. Long's complaint alleged Murphy was perpetrating a fraud on him from the outset.
In less than one year after acquiring his interest in the dealership, Long alleged Murphy demanded he give up his interest in the dealership. He was then represented by attorney Leventhal. Long alleged that Murphy misrepresented to him that the dealership and future owners would pay Long $75,000.00 per year for the rest of his life, although that provision was not part of the written agreement. Long asserts that Murphy told him it was necessary to keep the $75,000.00 agreement secret because if Ford found out he was leaving the dealership only one year after acquiring his initial interest in it, Ford would revoke or terminate the dealership. On its face, the agreement stated Long would receive $105,000 immediately, with the possibility of receiving another $20,000.00 in the future for a total of $125,000.00.
Long claims that the secret agreement was not discussed at a time when both Murphy and his counsel were present. Murphy claims that because Long's misrepresentation claim contradicts the written documents, he has opened the door to full disclosure of the communications he had with his attorneys throughout this transaction. Murphy points out that since Long was represented by counsel during the negotiations in which the promise was allegedly made, they are entitled to know what Long told his lawyer about the secret agreement. If such a promise had been made and if Long really relied on it in entering into the agreement, it is likely he told his attorney about it. Thus the conversations with the attorneys Smith and Leventhal would assist Murphy in proving lack of reliance on the claimed misrepresentation.
The trial court ruled that because Long has placed his reliance on the representations and actions of the defendants at issue, they are entitled to discover all of his communications with his attorneys concerning the subject of this lawsuit. We disagree that Long waived his attorney-client privilege under these circumstances. We think that Cuillo v. Cuillo, 621 So.2d 460 (Fla. 4th DCA 1993) resolves this issue properly, and that Savino v. Luciano, 92 So.2d 817 (Fla. 1957) is not controlling.
In Cuillo, a wife seeking a dissolution of marriage from her husband sought as part of her suit to invalidate an antenuptial agreement on the grounds that her husband had misrepresented his financial status, and he had agreed not to enforce the agreement. At the time she signed the antenuptial agreement, she was represented by an attorney. In the dissolution suit the husband sought discovery of her communications with her attorney who represented her while executing the agreement, and any communications between that attorney and her dissolution trial attorney concerning that transaction. The trial court reasoned that the wife waived her attorney client privilege because she *1372 sought to prove the invalidity of the antenuptial agreement and the credibility of the wife's claimed reliance on the husband's misrepresentations could possibly be impeached by resort to her communications with her attorney.
The court in Cuillo rejected that argument. It pointed out that the wife's lawsuit was based on her husband's alleged misrepresentations made to her. They were not privileged. It concluded that the fact that privileged communications occur in the course of a transaction that is later litigated does not eliminate or waive the privilege.
The Cuillo court distinguished Savino. That case involved review of a discovery order that had denied a motion for production of an audit and report made by a CPA, on the basis of accountant-client privilege. The supreme court overturned that ruling. However, the facts and circumstances in that case are distinguishable from this case, as well as Cuillo.
In Savino, a defendant in a lawsuit brought against him for an accounting and profits due under an employment contract, asserted by way of defense, that an audit and report he had prepared by his accountant established no funds were owed the plaintiff, and further, that the plaintiff had embezzled funds and owed the defendant and his company a considerable sum. The supreme court held that the defendant had waived the accountant-client privilege in that case because the content of the audit and report were the sum and substance of the defendant's defense and counterclaim, and they would have to be proven at trial. Thus, the privilege was waived at the discovery stage.
The court held:
[W]hen a party has filed a claim, based upon a matter ordinarily Privileged, the proof of which will necessarily require that the privileged matter be offered in evidence, we think he has waived his right to insist, in pretrial discovery proceedings that the matter is privileged.
Savino, 92 So.2d at 819.
In this case, the alleged misrepresentations being sued on were made, if at all, by Murphy and the other defendants. None of these matters are privileged. In order to prove his case, Long does not need to resort to proof of privileged communications with his attorneys. Long's reliance on the alleged misrepresentations vel non, is an issue in the case, but it is no more central to the case than in Cuillo, where the husband disputed his wife's reliance on his alleged misrepresentations. Proof of privileged communications to dispute reasonable reliance may well be relevant to the defense in this case, but that alone does not waive the privilege. Long must do something more than sue on the alleged misrepresentations made to him by Murphy and the other defendants before it can properly be held that Long waived his privilege for communications with his attorneys during the negotiations for buying and terminating his interest in the dealership.
Petition for Writ of Certiorari GRANTED.
HARRIS, J., concurs.
GRIFFIN, J., concurs and concurs specially with opinion.
GRIFFIN, Judge, concurring and concurring specially.
I write in case anyone who reads our opinion might conclude that we find nothing extraordinary about the claim out of which this discovery dispute arises. As I understand it, the petitioner entered into a written contract for the sale of his interest in the automobile dealership for $125,000, but he's not suing on this contract. His cause of action sounds in "fraud": that he was promised orally (but falsely) that if he would sign the $125,000 agreement, he would be paid $75,000 per year for the rest of his life. He asserts this latter agreement was to be kept secret as part of a scheme to defraud Ford. I, for one, find this claim to be remarkable.
While I agree with the majority concerning respondent's claim of waiver of the privilege by virtue of petitioner placing his state of mind in issue, there may well have been a waiver of the privilege for communications with attorney Leventhal by virtue of the petitioner's response to respondent's interrogatory No. 5:

*1373 5. Describe in detail all oral or written communications (by date, persons involved, means of communication, and subject matter) between Plaintiff and Robert A. Leventhal and/or the law firm of Leventhal & Slaughter, P.A., pertaining or relating, in whole or in part, to any contracts, agreements or business dealings concerning the formation, ownership, or operation of LM Motors, Inc. d/b/a Trail Lincoln-Mercury. Objection, the Interrogatory is vague, ambiguous and overbroad. Subject to the foregoing objections, Plaintiff answers the foregoing Interrogatory as follows. The substance of my communications with Robert A. Leventhal with the Law Firm of Leventhal & Slaughter, P.A., pertained to whether I should divest my ownership interest in LM MOTORS. L. MURPHY recommended that I see Mr. LEVENTHAL. I met with LEVENTHAL twice, the first time for approximately 10 minutes and the second time for approximately 15 minutes. LEVENTHAL advised me that he thought it was a "good deal".
Subject matter waiver has not been raised, however. See, e.g., U.S. ex rel. Mayman v. Martin Marietta Corp., 886 F. Supp. 1243, 1251 (D.Md. 1995).
NOTES
[1] After filing the suit, Long voluntarily dismissed Leventhal and his firm as defendants.