LAMBERT, J.
Petitioner, Markel American Insurance Company (“Markel”), seeks certiorari review of an amended discovery order denying its motion for protective order to prevent the depositions of its lead counsel and company representative. The trial court concluded that Markel, by filing suit to reform a contract between the parties, waived protected attorney-client communications and work-product privileges, and that Markel’s counsel also waived these privileges by voluntarily disclosing privileged information at a hearing addressing the interpretation of the contract. Concluding that the trial court departed from the essential requirements of law in finding a waiver of the attorney-client and work-product doctrine privileges, we grant the writ in part.
Respondent, Tina Baker, was injured in a motorcycle accident due to the alleged negligence of Mark Flugga. *88 Markel insured Mark and Robert Flugga .(“the Fluggas”), the owners of the motorcycle. Prior to suit being filed, Markel tendered its $10,000 policy limit to Baker to settle her claim, but her attorney rejected the tender, claiming Markel acted in bad faith by not timely resolving the claim. Baker thereafter filed suit in Lake County against the Fluggas. In the months leading up to trial, a dispute arose as to whether Markel had breached any duties of good faith owed to its insureds (the Fluggas) in its handling of Baker’s bodily injury liability claim. As a result, Markel filed a declaratory judgment action in federal court seeking a declaration that it (1) had not committed bad faith and (2) did not breach its duty of good faith owed to the Fluggas. Before the state court trial went forward, Markel and the parties to this litigation entered into a Cunningham agreement by which the parties agreed to try the “bad faith” case first in federal court and stay the state court case. See generally Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179 (Fla.1994).[1]
Based on the Cunningham agreement, Markel agreed that if there was a judicial determination that it breached one or more of its duties of good faith owed to its insureds in the handling of Baker’s claim, then it would pay Baker $400,000 and. pay Baker’s and the Fluggas’ attorneys’ fees and costs. Conversely, if the determination was that Markel did not breach one or more of its duties of good faith, then the $10,000 tendered to Baker would be accepted as full and final payment, and Baker would dismiss her negligence action with prejudice and sign a release of all her claims in favor of the Fluggas and Markel. The state court stayed its case based on this agreement.
During the pendency of the federal court case, a dispute arose as to the scope of the agreement. Baker and the Fluggas asserted that the parties did not agree to litigate a “full blown” bad-faith case, but rather, that they only agreed to litigate whether Markel breached a single duty of good faith. They asserted that if they could show a breach of a single duty, then they would be the “prevailing” parties in the federal court action. In contrast, Markel argued that the agreement was not that narrow and that the parties agreed to litigate a traditional bad-faith case with bad faith being determined under the totality of the circumstances standard set forth under Florida law.
The federal court did not resolve the meaning of the Cunningham agreement. Instead, the federal court directed Markel, Baker, and the Fluggas to seek a determination in state court regarding their respective rights and obligations, or the scope and meaning of their Cunningham agreement, or to otherwise amicably resolve the case.
• Markel then filed a two-count “Complaint” in state court for declaratory judgment and for reformation of the Cunningham agreement. In count one, Markel sought a judicial declaration that the scope *89 and interpretation of the Cunningham agreement was whether Markel acted in bad faith under a totality of the circumstances analysis. Alternatively, in count two, Markel sought to reform the defective written agreement to accurately reflect the intent of the parties. Following a hearing, on October 16, 2013, the state court issued its ruling on count one, rejecting Markel’s argument and finding that the plain language of the Cunningham agreement was that the parties intended to seek a determination of whether Markel breached one or more duties of good faith to its insureds in the handling of Baker’s claim against the Fluggas.
As a result, Markel pursued its claim for reformation of the agreement. Thereafter, Baker propounded discovery on Mark-el. Baker sought, in part, “All COMMUNICATIONS between YOU and YOUR attorneys relating to the STIPULATION [Cunningham agreement] or any proposed or draft agreements that preceded the STIPULATION,” as well as a notice of deposition of the Markel representative with the most knowledge, seeking, “[I]den-tification and explanation of all communications between or among YOU and LITCHFIELD CAVO related to the STIPULATION.”[2] Baker also served a notice of deposition of John R. Catizone (Markel’s lead counsel in the case), commanding that he produce at deposition “All COMMUNICATIONS between YOU and MAIC [Markel] relating to the STIPULATION or any proposed or draft agreements that preceded the STIPULATION.”
Prior to the scheduled deposition of Markel’s corporate representative, Markel filed a motion for protective order, asserting that all of the testimony being sought from Markel’s corporate representative was privileged, attorney-client communications. Markel also filed a motion for protective order concerning the deposition of its lead counsel for the same reason. On December 10, 2013, the court held a hearing on Markel’s motions and ruled that Markel had waived its attorney-client privilege as to all documents and testimony by virtue of the reformation action, and by its lead counsel disclosing matters at the October 16, 2013 hearing concerning his intent and interpretation of the agreement. At a later hearing, the trial court ruled that the work-product privilege had also been waived, and entered an amended order on Markel’s motions for protective order, which provides in pertinent part:
First, MAIC [Markel] placed privileged information at issue in this lawsuit which will necessarily require proof by way of ordinarily privileged information. Second, even if MAIC had not placed privileged information at issue, MAIC voluntarily disclosed privileged information, including during the hearing before this Court on October 16, 2013, as demonstrated in the transcript at pages 4 through 28.
Markel asserts in the instant petition that the communications of which Baker seeks discovery are confidential communications between the client and its counsel that are protected by the attorney-client privilege. Markel claims that it did not waive the attorney-client privilege either directly or indirectly and that the portions of the hearing transcript that the court relied upon to find a waiver make absolutely no mention of communications between Markel and its counsel. Lastly, Markel states that the discovery of the attorney-client communications are not necessary to the litigation of the reformation action.
“[0]nce privileged information is disclosed, there is no remedy for the de *90 struction of the privilege available on direct appeal.” Estate of Stephens ex rel. Clark v. Galen Health Care, Inc., 911 So.2d 277, 279 (Fla. 2d DCA 2005) (citing Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987)). Therefore, the compelled discovery of privileged information causes material injury of an irreparable nature and is reviewable by certiorari. See Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995) (citing Martin-Johnson, 509 So.2d at 1100).
The attorney-client privilege[3] is inviolate as to matters within its scope, and waiver of the attorney-client privilege is not favored in Florida. TIG Ins. Corp. of Am. v. Johnson, 799 So.2d 339, 341 (Fla. 4th DCA 2001) (citing Liberty Mut. Ins. Co. v. Lease Am., Inc., 735 So.2d 560, 562 (Fla. 4th DCA 1999)). However, it may be waived by the party holding the privilege. Section 90.507, Florida Statutes, addresses waiver of a privileged communication as follows:
A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person, or the person’s predecessor while holder of the privilege, voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. This section is not applicable when the disclosure is itself a privileged communication.
§ 90.507, Fla. Stat. (2013).
 The main issue in this proceeding is whether the reformation action by its very nature constitutes a waiver of the attorney-client privilege. A court of equity may reform a written instrument to the extent that the parties’ intentions are not accurately expressed within the instrument due to either a mutual mistake or a unilateral mistake coupled with inequitable conduct by the other party. See Providence Square Ass’n, Inc. v. Biancardi, 507 So.2d 1366, 1369 (Fla.1987); Smith v. Royal Auto. Group, Inc., 675 So.2d 144, 150 (Fla. 5th DCA 1996). “[I]n reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument so that it accurately reflects the true terms of the agreement actually reached.” Providence, 507 So.2d at 1370.
Since Markel’s intent is relevant to the issue of whether there was a mutual or unilateral mistake, it will be incumbent for Markel to present evidence of Markel’s intent with regard to the Cunningham agreement. Id. at 1371 (stating that in a reformation action, “parol evidence is admissible for the purpose of demonstrating that the true intent of the parties was something other than that expressed in the written instrument”); Smith, 675 So.2d at 154 (stating that the plaintiff has the “burden of proving the intent of parties and, by clear and comincing evidence, demonstrating some ground for reformation such as mutual mistake or unilateral mistake coupled with inequitable conduct”). Markel’s counsel, at the December 10, 2013 hearing (on the motions for protective order), admitted' that the attorneys involved in the Cunningham agreement needed to provide testimony with respect to intent. Additionally, Markel acknowledged that its witnesses may testify as to their intent with regard to the Cunningham agreement, but contended that it is not necessary in litigating the reformation action to present evidence of privileged communications to establish its intent or for Baker to mount a defense.
*91 In the context of this case, we find that the filing of a reformation action, which again involves a question of intent, does not automatically result in a waiver of attorney-client privilege. Cf. Jenney v. Airdata Wiman, Inc., 846 So.2d 664, 668 (Fla. 2d DCA 2003) (holding that raising the issue of the parties’ intent is not sufficient to waive attorney-client privilege); Long v. Murphy, 663 So.2d 1370, 1372 (Fla. 5th DCA 1995) (holding that a party “must do something more than sue on the alleged misrepresentations made to him ... before it can properly be held that [he] waived his privilege for communications with his attorneys during the negotiations” for an agreement). Moreover, the possibility that a party’s statements concerning his intent in forming a contract could be impeached by confidential communications between that party and his attorney does not give the opposing party a right to have those confidential communications disclosed. See Cuillo v. Cuillo, 621 So.2d 460, 462 (Fla. 4th DCA 1993) (citing Fla. Mining & Materials Corp. v. Cont’l Cas. Co., 556 So.2d 518 (Fla. 2d DCA 1990)).
Here, Baker is able to mount a defense without using the privileged communications because Markel has to prove either a mutual mistake among the parties to the agreement, or a unilateral mistake coupled with inequitable conduct by the other parties to the agreement, before the contract may be reformed. Though Baker is not privy to Markel’s attorney-client communications, she can defend by presenting her own witnesses showing the absence of a mutual mistake. If Markel claims it committed a unilateral mistake and there was inequitable conduct by Baker, she can likewise defend that claim without Markel’s attorney-client communications. In other words, Baker has not shown that she will be disadvantaged without the confidential information.
The second issue we address is whether Markel’s counsel waived the attorney-client or work-product privilege. At the declaratory judgment hearing before the state court on October 16, 2013, which was referenced in the amended order finding waiver, counsel for Markel stated the following:
The parties agreed to litigate whether or not Markel breached one or more duties of good faith in the handling of Baker’s claim. Now, of course, you know, our position is we’ve always understood that term whether Markel breached one or more duties of good faith to mean exactly the same thing as whether Markel committed bad faith....
[[Image here]]
Your Honor, responding to both, I’m going to respond to Mr. Mulholland first, saying the Perrien case was in the forefront. I asked an associate to research to what extent the terms and provisions of a Cunningham agreement were negotiable. And that associate was like a third year found a case called Perrien. She told me she found this case called Perrien that was dealing— because I wanted to get a discovery limitation. And the associate said, I found this case, Perrien, that says parties can agree to negotiate a discovery limitation. And the court refused to, in the Perrien discovery we’re talking about, the court refuses to grant the insurer a limitation of discovery because the court said, you could have agreed to a limitation of discovery in the agreement. That’s all I ever knew about the Perrien case at that time. So, to suggest I knew anything different is ridiculous. The other thing is, going to Mr. Cathey’s argument, our office filed a declaratory judgment action in anticipation of the tort action going forward and there being an excess verdict because it *92 was a 10/20 policy. So we filed a declaratory judgment action asking the federal court to determine whether or not we committed, had committed bad faith. We wanted to get to federal court as quickly as we could. Mr. Cathey sent me an e-mail saying, the federal court doesn’t have jurisdiction to hear that case unless there’s either, A, an excess judgment, or B, a Cunningham agreement. We concluded he was correct. And so we negotiated the Cunningham agreement that was sent by Mr. Mulhol-land. It was Mr. Cathey’s — with Mr. Cathey’s language, and we amended our declaratory judgment action. And when we amended our declaratory judgment action, yes, we said, we’re here to litigate whether Markel breached one or more duties of' good faith because that was the language of the agreement. But to suggest that we had somehow changed our mind about what we were doing — all we’re doing is citing the language in the agreement, because before we didn’t have an agreement, second, you know, then we did have an agreement. So, you know, they’re pointing to things — also Mr. Cathey again misspoke about the hearing where the magistrate ruled and said we prevailed on that. We only asked for a limitation to the handling of Baker’s claim. Again, we did— did we say one or more duties breached? Of course, because to us that’s the same as whether we committed bad faith. But the magistrate, the ultimate ruling by the magistrate was that they were entitled to depose a corporate representative with the most knowledge regarding the handling of motorcycle claims in Florida. That was the court’s ruling. So the court gave us not all the limitation we wanted, gave us part of it. Had nothing to do with the interpretation of the agreement in that respect.
The trial court found that the above statements were voluntary disclosures of privileged information constituting a waiver of attorney-client privilege. We disagree. The statements did not refer to any communications between Markel’s counsel and its corporate representatives. The attorney was discussing his interpretation and understanding of the Cunningham, agreement and the legal research performed by an associate to ascertain whether discovery limitations could be incorporated into Cunningham agreements. In Florida, waiver of the attorney-client privilege is not favored, and we find that the record does not show a clear, intentional waiver of the privilege by Markel’s counsel.
We also find that there has not been a waiver of the work-product privilege regarding the opinion work product of Markel’s attorneys. The work-product privilege generally protects documents and papers of an attorney or a party that are prepared in anticipation of litigation. See Fla. R. Civ. P. 1.280(b)(8); S. Bell Tel. & Tel. Co. v. Deason, 632 So.2d 1377, 1383-84 (Fla.1994). “Opinion work product consists primarily of the attorney’s mental impressions, conclusions, opinions, and theories” concerning the client’s case and is basically absolutely privileged. Id. (citing State v. Rabin, 495 So.2d 257 (Fla. 3d DCA 1986)). At the October 16, 2013 hearing, Markel’s counsel did not divulge any mental impressions, conclusions, or legal theories that were contained in trial preparation documents concerning the issue of intent. Markel’s counsel was referring to legal research conducted during the negotiation process prior to the Cunningham agreement, which involved the issue of whether a discovery limitation could be stipulated to as part of the agreement. This is a collateral matter that is neither directly related to the interpreta *93 tion and scope of the bad-faith action, nor to the issue of mistake, both of which are the subjects of the reformation action.
In summary, the depositions of Market's corporate representative and its counsel are permissible because the parties’ intent as well as the discussions between the attorneys for the respective parties that led to the agreement are relevant in determining whether the contract needs to be reformed. We find, however, that there has been no waiver of either the attorney-client or work-product privilege. Thus, Baker is precluded from inquiring into these privileged communications.
WRIT GRANTED in part; ORDER QUASHED.
TORPY, C.J., and PALMER, J., concur.

. In Cunningham, the Florida Supreme Court recognized that "[u]nder ordinary circumstances, a third party must obtain a judgment against the insured in excess of the policy limits before prosecuting a bad-faith claim against the insured’s liability carrier.” 630 So.2d at 181. However, the court concluded that when parties stipulate that a bad-faith claim can be tried prior to the underlying tort claim, the trial court has jurisdiction to decide the insurer’s liability in the bad-faith claim before a final determination has been made in the underlying tort action. Id. at 182. The court determined that the stipulation was the functional equivalent of an excess judgment and saw no reason why it should not "be enforced if entered into with good faith and not obtained by fraud, misrepresentation, or mistake, and not against public policy.” Id.

. Litchfield Cavo LLP is the law firm representing Markel.

. See generally § 90.502, Fla. Stat. (2013) (governing "[Ijawyer-client privilege”).