816 So.2d 1165 (2002)
CHOICE RESTAURANT ACQUISITION LTD., a Florida limited partnership, Petitioner,
v.
WHITLEY, INC., f/k/a Choice Restaurant Equipment, Inc., a Florida corporation, Lauren Rodberg and Evelyn Rodberg, Respondents.
No. 4D02-114.
District Court of Appeal of Florida, Fourth District.
May 8, 2002.
Rehearing Denied June 7, 2002.
Andrew D. Rafkin of Broad & Cassel, West Palm Beach, for petitioner.
C. Philip Campbell, Jr. and Duane A. Daiker of Shumaker, Loop & Kendrick, LLP, Tampa, and John F. Mariani of Levy, Kneen & Mariani, LLC, West Palm Beach, for respondents.
*1166 HAZOURI, J.
By petition for writ of common law certiorari, Choice Restaurant Acquisition Ltd. (Choice), the petitioner below, seeks review of a discovery order granting respondents' motion to compel answers to certain deposition questions which Choice asserts are protected by the accountant/client privilege. We grant review and quash the order.
This cause arises from a business dispute involving a 1998 agreement, wherein Choice agreed to purchase from respondents certain assets of a restaurant supply business for $8,500,000. In an amended complaint, Choice alleged that respondents breached representations and warranties contained in the agreement by falsely representing the value of the conveyed inventory and falsely representing that they had not lost customers in the past. In their answer, respondents alleged that they lacked knowledge as to whether Choice relied upon their representations and warranties.
Prior to the May 13, 1998 closing, Choice's principals retained an accounting firm, Grant, Thornton, to perform limited due diligence in preparation for purchasing the assets. As the litigation proceeded, respondents sought to depose Mitchell Less, who was Grant, Thornton's manager in charge of the due diligence engagement and is the subject of the discovery order which is the subject of this appeal. In the initial stage of the deposition, Mitchell Less testified that the due diligence for which his firm had been hired was never completed. Upon further questioning by respondents, Choice asserted the accountant/client privilege to the following questions:
1. What conversations did you have with Mr. Hindman [one of Choice's principals] prior to being engaged on December 10, 1997?
2. What did Mr. Hindman tell you about why he didn't hire the Ruden, McClosky law firm?
3. What did Mr. Hindman tell you Mr. Balousek's [the agent or general manager of Choice] role would be in the company?
4. With respect to a due diligence checklist, what did Mr. Balousek tell you?
5. Did Mr. Balousek ever inquire of you regarding the inventory to determine the turnover period for inventory?
6. What did the clients tell you in terms of why they did not want Grant, Thornton to finish the due diligence?
7. What did you tell Mr. Coughlan [another of Choice's principals] and Mr. Hindman about your findings?
8. What did you discuss with Mr. Hindman and Mr. Coughlan regarding Bank America's request for Grant, Thornton's work papers?
9. Did Mr. Balousek ever inquire of you or ask you to examine the books and records of Ms. Rodberg's company, and in particular, any information related to the inventory to determine the turnover of inventory?
Respondents moved to compel answers to the aforementioned questions, arguing that Choice placed at issue the information available to its accountant, Grant, Thornton, in the due diligence process. Additionally, respondents argued that to the extent that there were issues as to the proper valuation of the inventory which was subject to the sale, and to the extent that Choice alleged issues of failure to disclose loss of accounts by respondents, Choice could not maintain their fraud claims unless it showed detrimental reliance. Thus, respondents reasoned that they were entitled to depose Mitchell Less to determine whether Choice knew of the *1167 alleged improper valuation of the inventory prior to the closing and, therefore, did not rely to its detriment on representations made by respondents.
At the conclusion of the hearing on the motion to compel, the trial court accepted this latter argument and granted the motion to compel, stating:
Okay, based on the fraud claim and the fact detrimental reliance is a required element to be proven, I think this information is relevant so, therefore, I'm going to deny the motion for protective order and require that the information be produced.
Although the information may be relevant, it does not follow that relevancy trumps the accountant/client privilege set forth in section 90.5055, Florida Statutes (1999). This privilege protects:
the client's right to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications with an accountant when such other person learned of the communications because they were made in the rendition of accounting services to the client. This privilege includes other confidential information obtained by the accountant from the client for the purposes of rendering the accounting advice.
§ 90.5055(2), Fla. Stat. (1999).
It is true that the privilege can be waived by a party if it injects into a case an issue that requires an examination of otherwise protected communications. See First S. Baptist Church of Mandarin, Fla., Inc. v. First Nat'l Bank of Amarillo, 610 So.2d 452 (Fla. 1st DCA 1992). However, as the first district stated in Home Insurance Co. v. Advance Machine Co., 443 So.2d 165, 168 (Fla. 1st DCA 1983):
Although it is the rule in Florida that a party who bases a claim on matters which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived that privilege, see Savino v. Luciano, 92 So.2d 817, 819 (Fla.1957), the general and we think controlling rule is that the attorney-client privilege is not "waived by bringing or defending a suit." Burlington Industries v. Exxon Corporation, 65 F.R.D. 26, 35 (D.Md. 1974). The attorney-client privilege is of course "designed precisely to enable people to bring and defend lawsuits. Consequently, if the mere bringing of a lawsuit waived the privilege, it would have little meaningful existence." Connell v. Bernstein-Macaulay, Inc., 407 F.Supp. 420, 422 (S.D.N.Y.1976).
Furthermore, a court cannot justify finding waiver of the privilege merely because the information sought is needed by the opposing party to provide information helpful to cross examination or for the defense of a cause of action.
In this lawsuit, Choice alleged that the agreement at issue contained representations and warranties which were false and that it sustained damages as a result. Respondents sought the requested answers to deposition questions of Mitchell Less not to prove Choice's claim of fraud, but rather to defend against it by gathering evidence they hoped would support a defense to the fraud claim, i.e. Choice did not rely on the representations of respondents based on what Choice learned from the incomplete due diligence efforts of Grant, Thornton. This is not grounds for the discovery of otherwise privileged information. See Volpe v. Conroy, Simberg & Ganon, P.A., 720 So.2d 537 (Fla. 4th DCA 1998) (attorney/client privilege upheld in legal malpractice case even though defendant claimed that privileged information *1168 was necessary for the defendant to demonstrate that the plaintiff had not reasonably relied on legal advice); Cuillo v. Cuillo, 621 So.2d 460 (Fla. 4th DCA 1993) (wife's communications to attorney who represented her when antenuptial agreement was signed, which allegedly revealed wife's knowledge of misrepresentations made by husband regarding nature and extent of his assets, were protected by attorney-client privilege and not discoverable in subsequent action to invalidate agreement based on husband's fraud; Florida statute providing that attorney-client privilege does not apply when services of lawyer are sought or obtained to enable client to commit fraud did not apply); Long v. Murphy, 663 So.2d 1370 (Fla. 5th DCA 1995) (finding that claims of fraud and misrepresentation during negotiation for buying and terminating plaintiff's interest in a dealership did not waive the privilege for communications with attorneys during the negotiations, even though the information would have been relevant to the issue of reasonable reliance).
Finally, the mere relevance of the information is not sufficient grounds to override this privilege. See Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A., 715 So.2d 1021 (Fla. 4th DCA 1998).
For the above reasons, we conclude that the trial court departed from the essential requirements of law in overruling Choice's assertion of the accountant/client privilege and we quash the discovery order under review.
Reversed.
KLEIN, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
I concur in quashing the order in question. In my opinion, the discovery order is unjustified because under both the contract and Florida law, the seller had no legal basis to challenge buyer's reliance on the alleged fraudulent inducements as to the value of inventory and lost customers in the past. As I understand the contract, it provided that:
"notwithstanding any knowledge of facts determined or determinable by any party by investigation, each party shall have the full right to rely on [respondents'] representations and warranties."
The import of that provision is that buyer had no obligation of due diligence to investigate these warranties. If that is their agreement, then surely it does not matter what buyer may have told its accountants or vice versa.
Moreover this contractual provision is quite in keeping with Florida law on common law fraud. In Besett v. Basnett, 389 So.2d 995 (Fla.1980), the court held that a recipient may rely on the truthfulness of a representation even though an investigation might have revealed its falsity. The only exception is where the recipient already knows the representation is false or its falsity is obvious under the circumstances. Here the subject of the communications is whether falsity was discovered during the due diligence investigation, so the exception of Besett is not at issue. Besett overruled Potakar v. Hurtak, 82 So.2d 502 (Fla.1955), where the court had allowed dismissal of a fraud claim because there were no allegations as to the recipient's right to rely on the representations and as to his diligence in investigating the truthfulness of the representations. Thus under Besett "due diligence" is irrelevant.
If buyer already knew that the warranties as to value of inventory and lost customers were false, his due diligence in investigating them is similarly irrelevant. Hence the communications at issue in the *1169 discovery order are not relevant and, so far as I can see, not even likely to lead to admissible evidence. On this basis I join in the result.