940 So.2d 504 (2006)
Bobby L. COATES, an individual, Deborah R. Coates, an individual, Bredel Corporation, a Florida corporation, Bredel Management Company, Inc., a Florida corporation, and Trust Under Deferred Compensation Plan, a Florida grantor trust, Petitioners,
v.
AKERMAN, SENTERFITT & EIDSON, P.A., a Florida professional service corporation, Temple Drummond, an individual, Joseph Rugg, an individual, IFL Capital Group, Inc., an Arizona corporation, and Lex J. Byers, an individual, Respondents.
No. 2D05-4688.
District Court of Appeal of Florida, Second District.
October 20, 2006.
*505 Robert C. Widman of Morris & Widman, P.A., Venice, for Petitioners.
Benjamin H. Hill, III, Dennis P. Waggoner, and Marie A. Borland of Hill, Ward & Henderson, P.A., Tampa, for Respondents Akerman, Senterfitt & Eidson, P.A. and Joseph Rugg.
David M. Caldevilla and Ronald A. Christaldi of de la Parte & Gilbert, P.A., Tampa, for Respondent Temple Drummond.
No appearance for Respondents IFL Capital Group, Inc. and Lex J. Byers.
SILBERMAN, Judge.
In the trial court, Petitioners Bobby L. Coates and Deborah R. Coates (jointly referred to as Coates), Bredel Corporation (Bredel), Bredel Management Company, Inc. (BMC), and Trust Under Deferred Compensation Plan asserted the attorney-client privilege as to certain documents that Respondents Akerman, Senterfitt & Eidson, P.A., and Joseph Rugg (jointly *506 referred to as the lawyers) requested during discovery. In response, the lawyers filed motions to compel production of the documents. The trial court entered an order granting the motions to compel, finding that the documents were discoverable pursuant to the "at issue" doctrine. Petitioners (jointly referred to as the clients) seek certiorari review of the trial court's nonfinal order.
Certiorari review "is appropriate in cases that allow discovery of privileged information. This is because once privileged information is disclosed, there is no remedy for the destruction of the privilege available on direct appeal." Estate of Stephens v. Galen Health Care, Inc., 911 So.2d 277, 279 (Fla. 2d DCA 2005) (citations omitted); see also Robichaud v. Kennedy, 711 So.2d 186, 187 (Fla. 2d DCA 1998) ("Certiorari is the appropriate avenue to challenge a trial court order directing the disclosure of communications presumptively covered by the attorney-client privilege."). When an order directs disclosure of information that is allegedly privileged, "[t]he next question is whether the order departs from the essential requirements of law." See Estate of Stephens, 911 So.2d at 279. We conclude that the trial court departed from the essential requirements of law in ordering production of the disputed documents. Accordingly, we grant the petition and quash the order granting discovery.

THE UNDERLYING LITIGATION
In the underlying litigation, the clients sued the lawyers and others in connection with a "proprietary tax savings plan" and the establishment of a joint venture. According to the complaint, Coates and Bredel retained the Akerman law firm in 1999 "to provide ongoing legal services relating to various personal and business matters," including business, tax, and estate planning matters. The complaint alleged that Mr. Rugg was the lawyer with the Akerman firm responsible for representing Coates and Bredel.
In June 2001, Mr. Rugg introduced Coates to Temple Drummond, another lawyer with the Akerman firm, to discuss business, tax, and estate planning issues. Mr. Rugg and Mr. Drummond allegedly represented that "a) Drummond had expertise in the areas of business, tax, and estate planning; b) Drummond would recommend conservative business, tax and estate planning options to Coates; and c) Rugg would supervise Drummond's representation of Coates and Bredel in these matters."
The clients alleged that in September 2001, Mr. Drummond introduced Coates to Lex J. Byers, who proposed a "confidential and proprietary tax savings plan" that would eliminate the clients' tax liability. Mr. Drummond and Mr. Byers also proposed a joint business venture that involved offering the plan to medical doctors. The clients alleged that they invested in the plan and joint venture in reliance on the "purported expertise and representations of Drummond and Byers."
The clients asserted various claims, including a claim for legal malpractice against the Akerman firm, Mr. Drummond, and Mr. Rugg with respect to their legal advice concerning the plan and joint venture. The lawyers admitted that Coates and Bredel retained the Akerman firm to provide "certain legal services for certain matters," but they denied that the Akerman firm entered into any agreement for legal services relating to the matters alleged in the complaint. They denied any negligence and raised various affirmative defenses. They also alleged that the clients' own actions or the actions of others caused the clients' damages.
*507 Documents in the record reflect that during the period in which the clients were considering the plan and joint venture, other professionals represented them in various capacities. These included, among others, Jennifer Myers, in-house counsel for Bredel; the Kalish & Ward law firm and Roger Rovell of that firm; the accounting firm of Gregory, Sharer, and Stuart and Byron Smith of that firm; and attorney Brian Smooke.
The lawyers filed a third-party complaint and alleged several claims for contribution, including a claim against the accounting firm and a claim against Smooke & Drummond, P.C., Smooke & Associates, P.C., and Brian G. Smooke. The third-party complaint alleged that the third-party defendants negligently provided advice and information to the clients regarding the plan and joint venture that caused or contributed to any damages suffered by the clients. The lawyers did not file third-party claims against Ms. Myers, Mr. Rovell, or the Kalish & Ward firm.

THE DISCOVERY DISPUTE
During the litigation, the clients affirmatively waived their accountant-client privilege relating to communications with the accounting firm, and Mr. Smith testified to communications he had with Mr. Coates concerning the plan. Further, the record contains a memorandum from attorney Smooke to Mr. Coates dated June 14, 2002, which enumerates "some of the many tax deficiencies of the structure that was marketed to" Coates. The memorandum states that "the Department of Labor and the IRS possess an ample arsenal with which to attack the structure as well as the Transaction." Mr. Smooke copied the memorandum to Mr. Smith and to "Charles Stewart,"[1] who was also with the accounting firm, and the memorandum was eventually shared with the Kalish & Ward law firm and the Akerman firm.
During discovery, the lawyers sought production of documents "relating to any advice (legal or otherwise) that [the clients] received from individuals or entities other than [the lawyers] concerning the Plan and/or the ELC Joint Venture." The clients produced some documents and asserted the attorney-client privilege as to others. Ultimately, the lawyers filed a motion to compel and a supplemental motion to compel production of the disputed documents, including attorney notes authored by Ms. Myers; "attorney notes" authored by Ms. Vestinos, a paralegal who at some point worked under Ms. Myers;[2] and documents attributable to the Kalish & Ward firm or Mr. Rovell.
In support of their motions to compel, the lawyers argued that the clients "put at issue the advice [the clients] received from any other professionals with respect to the Plan and/or the ELC Joint Venture. Furthermore, the application of [the clients'] asserted privileges would deny [the lawyers] access to information vital to their defenseparticularly their defense as to causation." The lawyers argued that the clients waived the attorney-client privilege as to these communications under the "at issue" doctrine and the "selective disclosure" doctrine.
*508 Following a hearing, the trial court entered an order granting the motions to compel pursuant to the "at issue" doctrine. The court stated that "[w]here attorney-client communications are central to the matters at issue in the litigation, as they are in this case, policy weighs in favor of disclosure of such communications rather than secrecy."
The clients challenge the trial court's order, while the lawyers maintain that the trial court properly granted discovery of the disputed documents under the "at issue" doctrine or, alternatively, under the "selective disclosure" doctrine. Based on the status of the case as presented to us, we conclude that neither doctrine supports the order compelling discovery.

THE "AT ISSUE" DOCTRINE
"[W]aiver of the attorney-client and work-product privileges is not favored in Florida." TIG Ins. Corp. of Am. v. Johnson, 799 So.2d 339, 341 (Fla. 4th DCA 2001). However, all personal privileges may be waived by the client. Savino v. Luciano, 92 So.2d 817, 819 (Fla.1957). In Savino, the Florida Supreme Court articulated the "at issue" doctrine as follows: "[W]hen a party has filed a claim, based upon a matter ordinarily privileged, the proof of which will necessarily require that the privileged matter be offered in evidence, we think that he has waived his right to insist, in pretrial discovery proceedings, that the matter is privileged." Id. (emphasis added).
A party does not waive the attorney-client privilege merely by bringing or defending a lawsuit. See, e.g., Lee v. Progressive Express Ins. Co., 909 So.2d 475, 477 (Fla. 4th DCA 2005); Long v. Murphy, 663 So.2d 1370, 1372 (Fla. 5th DCA 1995); Home Ins. Co. v. Advance Mach. Co., 443 So.2d 165, 168 (Fla. 1st DCA 1983). Instead, waiver occurs when a party "raises a claim that will necessarily require proof by way of a privileged communication." Jenney v. Airdata Wiman, Inc., 846 So.2d 664, 668 (Fla. 2d DCA 2003); see also Lee, 909 So.2d at 477 ("[I]f proof of the claim would require evidence of the privileged matter, the privileged matter is discoverable.").
Here, the clients' claims against the lawyers are based upon the legal advice the lawyers allegedly gave to the clients concerning the plan and joint venture. Thus, the clients waived the attorney-client privilege with respect to their communications with the lawyers in connection with the plan and joint venture. The clients must necessarily present evidence of these communications at trial to prove their claims.
On the other hand, the clients have not placed at issue their communications with other professionals about the plan and joint venture simply by suing the lawyers. Rather, the lawyers, by asserting a defense based upon the clients' alleged communications with others, have sought to place such communications at issue. The lawyers have not shown that the clients must necessarily offer the disputed documents at trial to prove their claims. Instead, the lawyers seek the documents in the hope that they will contain information helpful to the lawyers' defense or third-party claims.
The lawyers cannot, by their assertion of a comparative fault defense, create a waiver of the clients' attorney-client privilege with respect to the clients' other counsel. See Lee, 909 So.2d at 477. In Lee, the plaintiff filed a bad faith claim against an insurer for its failure to settle the injury claim that he had brought in a prior lawsuit. The insurer argued that by bringing the bad faith claim, the plaintiff injected his settlement communications with his attorney into the litigation and waived any *509 privilege. The insurer also argued that it needed the information to show that it might have been unable to settle the injury claim. Id. at 476-77.
The court rejected these arguments, noting that generally, the attorney-client privilege is not waived merely by the filing or defending of a lawsuit. The court determined that the insurer, not the plaintiff, had injected the issue of whether the plaintiff had authorized his personal injury attorney to settle the case and, therefore, that the insurer had the burden to prove the plaintiff's unwillingness to settle. Because the plaintiff had not waived the privilege, the court quashed the trial court's order that allowed discovery of attorney-client communications. Id. at 477.
The possibility that the disputed documents may be relevant to or may assist the lawyers in their defense or in their third-party claims, or may perhaps assist in the lawyers' efforts to impeach the clients, does not create a waiver of the privilege. See Jenney, 846 So.2d at 668 ("[A]ttorney-client privilege is not waived simply because the credibility of Jenney's statements concerning his intent could possibly be impeached by his communications with his former attorney."); Choice Restaurant Acquisition Ltd. v. Whitley, Inc., 816 So.2d 1165, 1167-68 (Fla. 4th DCA 2002) (discussing the accountant-client privilege and noting that "a court cannot justify finding waiver of the privilege merely because the information sought is needed by the opposing party to provide information helpful to cross examination or for the defense of a cause of action" and that "mere relevance of the information is not sufficient grounds to override this privilege"); Coyne v. Schwartz, Gold, Cohen, Zakarin & Kotler, P.A., 715 So.2d 1021, 1023 (Fla. 4th DCA 1998) (determining, in a legal malpractice action, that the defending law firm's assertion that a subsequent firm had been negligent did not serve to override the client's attorney-client privilege with the subsequent firm); Shafnaker v. Clayton, 680 So.2d 1109, 1111 (Fla. 1st DCA 1996) (concluding that respondents could not discover communications petitioners had with other attorneys even though the information may have assisted respondents in their defense).
The lawyers seek to characterize the "matter" that the clients have placed at issue as any advice the clients received with respect to the plan and joint venture, not just the lawyers' advice and representations. The lawyers argue that because other attorneys provided legal advice to the clients during the time that the lawyers advised the clients, documents authored or received by the other attorneys are discoverable under the at issue doctrine. We disagree. The fact that the clients obtained advice from others while also being advised by the lawyers does not result in a waiver of the attorney-client privilege that exists as to communications between the clients and their other advisors.
In Choice Restaurant, Choice entered into an agreement to purchase certain assets of a restaurant supply business from the sellers. Choice retained an accountant to perform limited due diligence and eventually completed the purchase. Later, Choice brought a fraud claim against the sellers and alleged that they falsely represented the value of the inventory and falsely stated that they had not lost customers in the past. The sellers deposed Choice's accountant and asked questions to try and establish that Choice was aware of the alleged misrepresentations prior to the purchase and that Choice did not detrimentally rely on the sellers' representations. After Choice asserted the accountant-client privilege, the sellers moved to *510 compel answers to the questions. 816 So.2d at 1166-67.
The trial court found that Choice waived the accountant-client privilege by bringing its fraud claim against the sellers. The Fourth District disagreed, noting that the sellers had injected the issue of the accountant's advice into the litigation, not Choice. The court stated as follows:
Respondents sought the requested answers to deposition questions of [the accountant] not to prove Choice's claim of fraud, but rather to defend against it by gathering evidence they hoped would support a defense to the fraud claim, i.e. Choice did not rely on the representations of respondents based on what Choice learned from the incomplete due diligence efforts of [the accounting firm]. This is not grounds for the discovery of otherwise privileged information.
Id. at 1167. Thus, although Choice retained an accounting firm to assist regarding the purchase, its suit against the sellers concerning the purchase did not result in a waiver of the accountant-client privilege.
The same reasoning applies as to the attorney-client privilege. As noted in Volpe v. Conroy, Simberg & Ganon, P.A., 720 So.2d 537, 539 (Fla. 4th DCA 1998), "the mere fact that two attorneys may be representing a single client on the same matter does not waive the privilege that the client has to prevent his or her confidential communications to one of his or her lawyers from being revealed to the other lawyer." There, the plaintiffs were involved in construction litigation and their insurance company hired Conroy, Simberg & Gannon (CSG) to represent them. The Volpes also hired personal counsel. At the conclusion of the litigation, the Volpe's insurance company did not pay the entire judgment rendered against them.
The Volpes sued CSG for legal malpractice, alleging that CSG failed to advise them as to whether the insurance company would indemnify them against any adverse judgment. CSG raised as a defense that the Volpes' personal counsel contributed to the Volpes' damages. CSG sought to compel personal counsel to answer deposition questions concerning discussions with the Volpes as to coverage. CSG claimed such communications might reveal that counsel had advised the Volpes regarding coverage. CSG argued that if discovery revealed the Volpes had received such advice from personal counsel, the Volpes could not show that CSG's negligence was the proximate cause of their loss.
As to CSG's reliance on the "at issue" doctrine to support its position that the Volpes had waived the attorney-client privilege, the court stated as follows:
If it would appear that the Volpes would be required to call their attorneys to testify on these very issues to establish the malpractice claim, then waiver of the attorney-client privilege might be implied. But there is no suggestion that the Volpes need this information to establish their claim; to the contrary, it is CSG which wants the information to establish their defense. The attorney-client privilege cannot be set aside simply because the opposing party claims that the information held by the attorney is necessary to prove the opposing party's case.
Id. at 539-40 (citation omitted).
Thus, for waiver to occur under the at issue doctrine, the proponent of a privilege must make a claim or raise a defense based upon the privileged matter and the proponent must necessarily use the privileged information in order to establish its claim or defense. Here, the clients have asserted claims for damages based on the advice they received from the lawyers. *511 The clients' claims are not based on the advice they received from their other counsel, and the lawyers have not shown that the clients must necessarily introduce communications with other counsel to prove their claims against the lawyers. Therefore, by compelling disclosure of the disputed documents based on the at issue doctrine, the trial court departed from the essential requirements of law, warranting certiorari relief.

THE "SELECTIVE DISCLOSURE" DOCTRINE
The lawyers alternatively argue that we should uphold the trial court's order under the "selective disclosure" doctrine. They contend that because the clients have disclosed some communications with respect to the plan and joint venture, the clients must disclose all such communications. The lawyers argue that by sharing Mr. Smooke's memorandum with third parties and by waiving their accountant-client privilege as to Gregory, Sharer, the clients thereby waived their attorney-client privilege with respect to any other communications they had with any other attorneys concerning the plan and the joint venture. The lawyers rely in part on International Telephone & Telegraph Corp. v. United Telephone Co. of Florida, 60 F.R.D. 177 (M.D.Fla.1973), and Hoyas v. State, 456 So.2d 1225 (Fla. 3d DCA 1984).
In International Telephone, the court recognized that "[t]estimonial privileges are exceptions to the general duty of every person to give testimony upon all facts inquired of in a court of law." Id. at 185. The court stated that "the privilege was intended as a shield, not a sword. Consequently, a party may not insist upon the protection of the privilege for damaging communications while disclosing other selected communications because they are self-serving." Id. (emphasis added); see also Hoyas, 456 So.2d at 1229 (same). The client does not waive the privilege by testifying generally in the case or testifying as to facts that were the subject of the consultation with his or her attorney, but if the client or attorney testifies as to privileged communications in part, this serves as "a waiver as to the remainder of the privileged consultation or consultations about the same subject." 60 F.R.D. at 186. "Similarly, if a party-client introduces part of his correspondence with his attorney, the production of all of the correspondence could be demanded." Id.
Section 90.507, Florida Statutes (2002), addresses waiver of a privileged communication as follows:
A person who has a privilege against disclosure of a confidential matter or communication waives the privilege if the person, or the person's predecessor while holder of the privilege, voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. This section is not applicable when the disclosure is itself a privileged communication.
When attorney-client communications are disclosed regarding a certain matter, there exists a limited waiver with respect to communications on that same, specific matter. See Courville v. Promedco of S.W. Fla., Inc., 743 So.2d 41, 42 (Fla. 2d DCA 1999) (holding that disclosure of attorney's communication regarding non-compete provision in a contract for the sale of a medical practice only served to waive communications with respect to the non-compete provision and not other aspects of the transaction).
In Old Stone Bank v. Farris, 647 So.2d 916 (Fla. 4th DCA 1994), the Fourth District quashed an order compelling disclosure of documents related to a loan transaction *512 that were protected by the attorney-client privilege. There, the bank's attorney had prepared a memorandum concerning the transaction and sent it to the bank. After the transaction became the subject of litigation between the bank and Mr. Farris, the bank voluntarily produced the memorandum. Mr. Farris then sought to depose the bank's attorney and sought production of all of his correspondence with the bank and all of his notes in connection with the loan transaction.
The Fourth District concluded that the bank's disclosure of the memorandum did not act as a waiver of all communications between the bank and its attorney pertaining to the transaction. The court noted that "[t]he fact that privileged communications occur in the course of a transaction which is later litigated does not eliminate the attorney-client privilege." Id. at 917. The court reasoned that "[t]he disclosed memorandum does not discuss all of the details surrounding the loan and letter of credit that may be found in the other correspondence and memoranda otherwise protected by an attorney-client privilege." Id.
Similarly, Mr. Smooke's memorandum does not reveal any privileged communications that the clients may have had with Ms. Myers or the Kalish & Ward firm regarding their decision to implement the plan or joint venture. Rather, it appears that Mr. Smooke prepared the memorandum to address Mr. Coates' concerns about the viability of the already-implemented plan and to identify the tax deficiencies in the plan for the Coates.
Likewise, the lawyers have not identified any disclosure of any privileged communications between the clients and Ms. Myers, Mr. Rovell, or the Kalish & Ward firm, whether through Mr. Smooke, the Gregory, Sharer firm, or otherwise. Accordingly, the lawyers have not established that production of the Smooke memorandum or the client's waiver of the accountant-client privilege with respect to Gregory, Sharer served as a waiver of all privileged communications with other professionals that relate to the plan and the joint venture.[3]
Based upon the foregoing, we cannot agree with the lawyers' argument that the "selective disclosure" doctrine provides an alternative basis for the trial court's decision compelling disclosure of the disputed documents.

CONCLUSION
Because the order compelling disclosure of the disputed documents constitutes a departure from the essential requirements of law, warranting certiorari relief, we grant the petition for writ of certiorari and quash the trial court's order.
Petition granted.
CASANUEVA and KELLY, JJ., Concur.
NOTES
[1] The memorandum refers to "Charles Stewart." Other documents in the record refer to "Charles Stuart" of the Gregory, Sharer, and Stuart accounting firm.
[2] The parties disputed in the trial court whether a paralegal's communications while being supervised by an attorney qualified for protection under the attorney-client privilege. In addition, the parties disputed whether an attorney supervised Ms. Vestinos during the entire period pertinent to the underlying litigation. The parties did not raise these arguments in this court, and we do not address them in this opinion.
[3] The clients also noted that they had produced the Smooke memorandum to the lawyers and others at a time when the lawyers still represented them. The clients viewed that disclosure as precluding their assertion of the attorney-client privilege as to the memorandum in the context of this litigation. Further, they were only claiming privilege as to documents that had not been disclosed to any third party.