DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AKERMAN LLP, ABS HEALTHCARE SERVICES LLC, HEALTH OPTION ONE LLC, MY AGENT SOLUTION LLC,** and **TPBO SERVICE LLC (COLLECTIVELY, THE "ICD COMPANIES"),**
Petitioners,

v.

**MICHELLE COHEN** and **SANDRA COHEN,**
Respondents.

Nos. 4D22-553 and 4D22-556

[November 9, 2022]

Consolidated petitions for writs of certiorari to the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James L. Martz, Judge; L.T. Case Nos. 50-2019-DR-009402-XXXX-SB and 50-2019-DR-008836-XXXX-SB.

Elizabeth A. Izquierdo and D. David Keller of Keller Landsberg PA, Fort Lauderdale, for petitioner Akerman, LLP.

Emily J. Chase and John B.T. Murray, Jr., of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for petitioners ICD Companies.

Joel M. Weissman and Ashley M. Bolender of Joel M. Weissman, P.A., West Palm Beach, for respondents.

CONNER, J.

Akerman LLP ("Akerman") and ABS Healthcare Services LLC, Health Option One LLC, My Agent Solution LLC, and TPBO Service LLC (collectively "the ICD Entities") petition for certiorari review of two January 24, 2022 written orders that compel Akerman to produce various documents sought by two separate subpoenas issued in two separate divorce proceedings after denying assertions of attorney-client privilege. We consolidated the cases for review by the same panel. Because the January 2022 orders deny assertions of attorney-client privilege, certiorari review is appropriate. *See Am. Airlines, Inc. v. Cimino*, 279 So. 3d 200, 203 (Fla. 4th DCA 2019) ("Certiorari is the appropriate vehicle to obtain review of orders requiring cat-out-of-the-bag disclosure of privileged documents."

(quoting *Fla. Power & Light Co. v. Hicks*, 162 So. 3d 1074, 1075 (Fla. 4th DCA 2015))).

Upon considering the record and arguments presented, we grant the petitions, quash both orders, explain our reasoning for determining the orders depart from the essential requirements of law, and remand for further proceedings consistent with this opinion. We decline to address any oral or written orders that postdate the January 2022 orders as beyond the scope of the petitions.

*Background*

This case has an unusual fact pattern in that it involves two brothers (Seth and Bradley) pursuing divorce in separate proceedings while represented by the same attorney. The wives (Michelle and Sandra, respectively) also share an attorney. The two brothers and their father are involved in multiple business entities created by the brothers to operate in the health insurance industry, including the ICD Entities. Neither brother owns a majority interest in any of the ICD Entities.[1]

Akerman has provided legal services to both couples in estate planning, asset protection, and in defending an IRS audit. Akerman has also provided numerous services as outside counsel for the brothers' various business entities.

The First Akerman Subpoena and March 2021 Hearing

Through discovery requests in 2019, Michelle initially sought the contested ICD documents, among other documents, from Seth. At the time, attorney Miller represented Seth in the divorce and performed legal work for the ICD Entities. In response to the discovery requests, attorney Miller moved to protect trade secrets and other confidential business information within the requested documents. Attorney Miller never asserted an attorney-client privilege as to the requested documents.

At a status conference in January 2020, Seth's and Michelle's attorneys agreed Seth would produce the ICD documents and other documents in exchange for an agreed confidentiality order. An agreed order for production to that general effect was entered by Judge Burton in February 2020. However, that order did not specifically mention the ICD Entities or

---

[1] Each brother holds 40% of the membership units in ABS Healthcare Services LLC, Health Option One LLC, and TPBO Service LLC. Each brother holds 25% of the membership units in My Agent Solution LLC.

documents. When Seth failed to produce the ICD documents, Michelle served Akerman with a subpoena for the documents ("the First Akerman Subpoena").

That subpoena sought documents pertaining to offshore trusts created by Seth and every invoice generated by Akerman to the ICD Entities. Akerman declined to produce ICD related documents, contending the request was overbroad, unduly burdensome, and infringed on attorney-client privilege. Thereafter, Michelle moved to compel production, resulting in a March 2021 hearing before Judge Martz.

Before the trial court heard Michelle's motion, and during a hearing on a different matter in the Seth-Michelle divorce, attorney Miller stated that Seth did not object to the subpoena and stated that "[w]e told them, by silence, send everything," referring to the ICD Entities.

Also prior to the hearing on Michelle's motion to compel, Akerman filed a privilege log asserting attorney-client privilege using a category-by-category format, rather than a document-by-document format, because of the categorical nature of the privilege asserted. The ICD Entities had not been added as parties to the Seth-Michelle divorce proceeding at the time of the March 2021 hearing, and they were not represented by counsel at the hearing.

During the March 2021 hearing, Michelle pointed to three occurrences to argue the attorney-client privilege was waived regarding the ICD documents. Michelle directed the trial court to attorney Miller's statement during the prior hearing,[2] Seth's lack of objection to the Akerman subpoena, and certain orders entered by Judge Burton prior to Akerman being served with the subpoena.

Seth objected, contending the "privilege" issue was not noticed for a hearing. The trial court disagreed, reasoning the issue of whether there was compliance with discovery requests and a subpoena was intertwined with privilege issues. However, the trial court acknowledged that the privilege issue could require an additional hearing. Michelle continued to argue Seth's lack of objection and attorney Miller's statement effectively waived the attorney-client privilege as to the ICD documents.

---

[2] At subsequent hearings and in subsequent filings, Akerman contends the "send them everything" comment pertained to the Gopman and Brian Harris documents discussed below.

The hearing then focused on a portion of the ICD documents referred to as "the Gopman Documents" and "the Brian Harris Documents." Gopman was an Akerman attorney engaged by Seth and Michelle to create offshore trusts for asset protection. Harris was an Akerman attorney who defended an IRS audit involving Seth and Michelle and multiple entities.

During the hearing, the trial court overruled Akerman's objections that the requests were overbroad and unduly burdensome, and Akerman's attorney-client privilege objections as to the Gopman and Brian Harris documents. An April 2021 order entered after the hearing reflects that ruling. Significantly, the April 2021 order was silent as to whether the attorney-client privilege was waived as to the ICD documents other than the Gopman and Brian Harris documents.

The Second Akerman Subpoena and October 2021 Hearing

Shortly after the March 2021 hearing on the First Akerman Subpoena, Sandra served Akerman with a second subpoena which sought production of Akerman's invoices and the sources of payment for those invoices, as well as other documents in connection with Akerman's representation of Seth and Bradley and multiple other entities, including the ICD Entities ("the Second Akerman Subpoena").

Because Michelle contended the First Akerman Subpoena was still not fully complied with, she later joined Sandra in moving to compel compliance with both subpoenas.

Akerman filed a written response to the motions to compel contending that no member of management or counsel for the ICD Entities had authorized waivers of attorney-client privilege. The ICD Entities supported that response with the declaration of their chief financial officer ("CFO") who stated that the ICD Entities did not waive their attorney-client privilege. The CFO further explained that Akerman was the ICD Entities' primary outside counsel and provided a list of legal services Akerman furnished to the ICD Entities in such matters as employment law, litigation claims by third parties, and an arbitration.[3]

In October 2021, the trial court held a hearing on the motions to compel compliance with the First and Second Akerman Subpoenas. By that time, the ICD Entities were added as third-party defendants in both divorce

---

[3] In subsequent filings and hearings, the ICD Entities maintained the listed services had nothing to do with issues related to equitable distribution or other issues raised in the divorce proceedings.

actions and were represented by the Gunster, Yoakley & Stewart, P.A., law firm.

At the hearing, the wives argued the April 2021 order issued after the March 2021 hearing on the First Akerman Subpoena required full production without applying an attorney-client privilege. The wives noted the ICD Entities were now parties and represented, and no entity sought relief from the April 2021 order, filed a privilege log, nor asked the trial court to review documents *in camera* (ignoring the February 2021 categorical privilege log filed in the Seth-Michelle divorce).

The husbands specifically argued the attorney-client privilege asserted by Akerman was not waived as to the ICD Entities. They argued the April 2021 order solely addressed the Seth-Michelle divorce and thus did not address Bradley's privilege issues. They also reminded the trial court the ICD Entities were not present at the March 2021 hearing or parties at that time. They further argued the ICD Entities are not marital assets and the wives were ignoring the formalities of corporate structure.

The ICD Entities clarified that Akerman possessed four general categories of documents: (1) the Gopman Documents; (2) the Brian Harris Documents; (3) documents relating to Meridian Trust Company; and (4) documents related to Akerman's representation of the ICD Entities as their outside general counsel. The ICD Entities argued the wives were not parties to any privilege associated with the fourth group of documents because the husbands, while owning a membership interest in the ICD Entities, "don't control the privilege." The husbands further argued that the attorney-client privilege dispute as to the fourth category of documents involved communications between the Entities and their lawyer which had nothing to do with the financial discovery and equitable distribution issues pertinent to the divorce proceedings.

The trial court commented it did not doubt that there was "privilege all over the place in many aspects of this case," and observed that what was contributing to the problem was the fact that Akerman did not have multiple "accounts" for clients to clearly categorize its information. The trial court then stated the case "screams for a special master to go through all of this with a fine tooth comb."

The trial court was frustrated that nothing was presented showing the individual ICD Entities asserted their "own privileges." Because the law firm does not hold the privilege, the trial court explained that the entities have "to step forward," and either waive or assert their privilege.

5

The trial court commented that it could not do its job "where we are right now." The trial court then announced that the April 2021 order remained "in play," and no privileges were asserted so far other than blanket privileges. The trial court concluded: "So I need specificity. And, quite frankly, the appellate court deserves my respect in trying to create specificity for them to rule later . . . ."

The wives' counsel asked if the trial court was permitting any further objections or a privilege log being filed, to which the trial court responded:

> We got a bunch of entities. ... And if you guys file something in the meantime, I'll address it. I don't know what more to say than that. I guess what I'm ruling today is that the blanket objections which have been argued today are insufficient to move this Court from its prior ruling. ... And it does require that the individual entities who hold the privilege assert the privilege if a privilege is going to be asserted and that it is on a case-by-case basis as needed. And then I think we'll have a clearer picture on who and what.

The trial court also stated it would consider any necessary redactions. The hearing ended with Akerman's attorney advising that Akerman would continue to work with the attorneys to produce the documents ordered and "let the other parties litigate any privilege issues, and then we'll abide by instructions or an order of the Court."

The January 24, 2022 orders under review (one in the Seth-Michelle divorce, the other in the Bradley-Sandra divorce) were issued to memorialize the trial court rulings at the October 2021 hearing.

*Certiorari Analysis*

Petitioners raise multiple arguments why we should quash the January 2022 orders under review. Three of their arguments are dispositive grounds for granting certiorari relief. We conclude the trial court departed from the essential requirements of law by: (1) determining that the ICD Entities waived the attorney-client privilege based on the conduct of Seth and attorney Miller; (2) failing to make an explicit determination as to the manner in which the privilege was waived and the scope of the waiver; and (3) failing to conduct an *in camera* review of the purportedly-privileged documents prior to ordering them to be produced.

Generally, the burden of establishing a discovery privilege rests on the party asserting the privilege. *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d

1377, 1383 (Fla. 1994). However, when communications appear privileged on their face, the party seeking disclosure bears the burden of proving that they are not. *Eight Hundred, Inc. v. Fla. Dep't of Revenue*, 837 So. 2d 574, 576 (Fla. 1st DCA 2003).

Here, the documents in dispute are purportedly communications between Akerman and a client, thus, prima facie appear to be attorney-client privileged. *See Brookings v. State*, 495 So. 2d 135, 139 (Fla. 1986) ("It is the communication with counsel which is privileged, not the facts."). Moreover, the wives do not contest that, but for a purported waiver, the documents are preliminarily subject to an attorney-client privilege.

A privilege can be waived by voluntary disclosure or consent. *See* § 90.507, Fla. Stat. (2021). Below and in this Court, the wives contend that Seth's failure to object to the First Akerman Subpoena and the statement by attorney Miller that "[w]e told them, by silence, send everything," constituted conduct broadly waiving the attorney-client privilege by the ICD Entities. The trial court apparently agreed with that contention in the April 2021 order and the January 2022 orders under review. We have multiple problems with that contention.

*Waiver by Client Consent*

We agree with petitioners that the wives' contention that the ICD Entities waived the attorney-client privilege by consent based on the conduct of either Seth, attorney Miller, or both, ignores that neither Seth nor attorney Miller *had the authority to waive the privilege* on behalf of the ICD Entities.

As the trial court correctly noted multiple times in the proceedings, the privilege belongs to and protects the client. *See* § 90.502(2), Fla. Stat. (2021) ("A *client* has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.") (emphasis added). If the privilege belongs to and protects the client, then *a fortiori* it is only the client who can waive the privilege. *See Sedgwick Claims Mgmt. Servs., Inc. v. Feller*, 163 So. 3d 1252, 1254 (Fla. 5th DCA 2015) ("[T]he trial court erred by finding that the attorney-client privilege was waived by counsel's statement at a hearing."); *Coates v. Akerman, Senterfitt & Eidson, P.A.*, 940 So. 2d 504, 508 (Fla. 2d DCA 2006) ("[A]ll personal privileges may be waived by the client."); *see generally*, Charles W. Ehrhardt, Florida Evidence § 502.8 (2014 ed.) ("The client is the holder of the privilege and is the only person who may waive it.") (citations omitted). Thus, attorney

Miller could not waive the ICD Entities' privilege without the express consent of the ICD Entities.

Section 90.502(1)(b), Florida Statutes (2021), defines "client" to include "any . . . corporation, association, or other organization or entity, either public or private." § 90.502(1)(b), Fla. Stat. (2021). "The power to exercise the corporate lawyer-client privilege rests with the corporation's management." *Tail of the Pup, Inc. v. Webb*, 528 So. 2d 506, 507 (Fla. 2d DCA 1988) (citation omitted). Because "all corporate powers are exercised by, or under the authority of, the corporation's board of directors . . . an individual stockholder, officer and director, has no authority to waive or assert the privilege against the wishes of the corporation's board of directors." *Id.* Although we could find no cases expressly addressing the structural authority by which a limited liability company waives its attorney-client privilege, like corporations, we conclude the company's management structure informs the decision.

In Florida, limited liability companies are either member-managed or manager-managed. § 605.0407(1), Fla. Stat. (2021). Unless the operating agreement or articles of organization expressly provides the company is or will be manager-managed, the company is member-managed. *Id.* If the company is member-managed, "[e]ach member's vote is proportionate to that member's then-current percentage or other interest in the profits of the limited liability company owned by all members," and "the affirmative vote or consent of a majority-in-interest of the members is required to undertake an act, whether within or outside the ordinary course of the company's activities and affairs." § 605.04073(1), Fla. Stat. (2021). Similarly, in a manager-managed company, "a matter relating to the activities and affairs of the company shall be decided" in one of three ways: "by the manager; if there is more than one manager, by the affirmative vote or consent of a majority of the managers; or if the action is taken without a meeting, by the managers' unanimous consent in a record." § 605.04073(2), Fla. Stat. (2021).

Nothing in the record shows Seth had the authority on behalf of any of the ICD Entities to waive the attorney-client privilege. The trial court apparently accepted the wives' argument that because Seth had a 40% ownership interest in three of the ICD Entities, he singularly had the authority to waive the privilege. Absent a record showing that an operating agreement or articles of organization granted Seth such authority, his ownership interest alone does not support the conclusion he had the singular management authority to waive the privilege. Thus, the trial court erred in accepting the wives' argument that Seth waived the privilege by not objecting to the First Akerman Subpoena and purportedly

authorizing the ICD Entities to produce the contested documents "by silence." The flawed premise of the April 2021 order was also carried over to the January 2022 orders under review.

*Waiver by Failure to Timely File a Privilege Log*

We next address the wives' argument that the privilege was waived by failing to timely file an adequate privilege log.

A finding of waiver is not favored, although it is within the trial court's discretion. *Compare Andreatta v. Brown*, 330 So. 3d 589, 591 (Fla. 1st DCA 2021) (finding no waiver where the party asserting the privilege had "e-mail[ed] explanations [that] were sufficient to expressly claim attorney-client privilege and describe the nature of the redacted communications") (citations omitted), *with TIG Ins. Corp. of Am. v. Johnson*, 799 So. 2d 339, 341 (Fla. 4th DCA 2001) (agreeing waiver is not favored but finding waiver under specific facts and where no log was filed).

The failure to file a privilege log meeting the requirements of Florida Rule of Civil Procedure 1.280(b)(6) may result in waiver of the attorney-client privilege. *DLJ Mortg. Cap., Inc. v. Fox*, 112 So. 3d 644, 645 (Fla. 4th DCA 2013) ("A trial court has discretion to find a waiver of privilege from the failure to file a privilege log.") (citation omitted). "However, the failure to file a log should not be applied to categorical assertions of privilege." *Id.*; *see also GKK, etc. v. Cruz*, 251 So. 3d 967, 969 (Fla. 3d DCA 2018); *Nevin v. Palm Beach Cnty. Sch. Bd.*, 958 So. 2d 1003, 1008 (Fla. 1st DCA 2007).

Almost a month prior to the March 2021 hearing on the First Akerman Subpoena, Akerman filed a privilege log. In responding to the petition, the wives assert that the trial court's April 2021 order failed to "sustain" any objection raised by Akerman at the March 2021 hearing, "meaning that its entire privilege log was rejected." From that assertion, the wives ask us to determine the trial court properly found a waiver of the privilege. Based on our review of the hearing transcript and the April 2021 order, we decline the invitation. Neither reveals a specific ruling that the privilege was waived by Akerman filing an untimely or inadequate privilege log.

After the Second Akerman Subpoena was served on Akerman, the wives moved to compel Akerman to produce the contested ICD Entities' documents. A month before the hearing, the ICD Entities were joined as parties and appeared at the hearing. Prior to the hearing, the ICD Entities filed the CFO's declaration stating the ICD Entities did not waive the attorney-client privilege as to the documents sought by the subpoena and

confirming that neither Seth nor Bradley unilaterally control the management of the ICD Entities.[4]

To the extent the April 2021 order constitutes an implied determination that the trial court found a waiver of the privilege by *the failure to timely file a privilege log*, we are satisfied such a determination departed from the essential requirements of law because it ignored that a privilege log was timely filed in February 2021 as to the disputed documents. If the order determined a waiver based on an *inadequate privilege log*, then the order again departed from the essential requirements of law because it did not afford the ICD Entities the opportunity to file an adequate log. *See Sedgwick*, 163 So. 3d at 1254 (quashing an order determining privilege was waived by counsel filing an insufficient detailed privilege log where the log was not produced in response to a trial court order and could have been amended to cure any defects had counsel been given that opportunity).

*Waiver Based on Orders Entered in 2020*

Next, the wives argue that the purported finding of complete waiver at the March 2021 hearing on the First Akerman Subpoena was merely an extension and continuation of 2020 orders entered by Judge Burton regarding production of the same contested documents directly from Seth. The premise of the argument is that because Seth raised other objections to the production, but never specifically asserted an attorney-client privilege, the privilege was completely waived as to the ICD Entities. That argument travels on the same faulty premise that Seth, singularly, had the management authority to waive the Entities' privilege. Thus, we reject this argument for the same reasons addressed above.

*Failure to Identify the Scope of Waiver*

"[I]f attorney-client privilege is waived regarding a certain matter, the waiver is limited to communications on the same matter." *Alliant Ins. Servs., Inc. v. Riemer Ins. Grp.*, 22 So. 3d 779, 781 (Fla. 4th DCA 2009) (citations omitted). "If the parties disagree as to the scope of the privilege waiver, a trial court must delineate the scope of the waiver before it may compel discovery of information." *Id.*

---

[4] Nothing in the record shows Bradley consented to a waiver of the privilege on behalf of the ICD Entities to support an argument that the prior waiver by Seth, coupled with Bradley's consent, constituted a vote of a majority of either the members or the managers.

In the instant case, at both the March 2021 and October 2021 hearings, *the husbands and Akerman* clearly disputed any waiver of attorney-client privilege by the ICD Entities. At the October 2021 hearing, *the ICD Entities* clearly disputed any waiver had occurred, as well as the scope of any waiver.

Our review of the transcripts of both hearings leads us to conclude the trial court made unclear or confusing statements as to the scope of the waiver. Review of the April 2021 and January 2022 orders reveal no clear statement of the scope of any waiver. Thus, the trial court departed from the essential requirements of law by failing to identify the scope of any waiver of the privilege.

*Failure to Conduct an <u>In Camera</u> Review*

For over thirty years, we have stated: "If a party seeks to compel the disclosure of documents that the opposing party claims are protected by attorney-client privilege, the party claiming the privilege is entitled to an *in camera* review of the documents by the trial court prior to disclosure." *Id.* (citing *Old Holdings, Ltd. v. Taplin, Howard, Shaw & Miller, P.A.*, 584 So. 2d 1128, 1128–29 (Fla. 4th DCA 1991)); *see also RC/PB, Inc. v. Ritz-Carlton Hotel Co., L.L.C.*, 132 So. 3d 325, 327 (Fla. 4th DCA 2014) (finding an *in camera* inspection was warranted before compelling production of documents to which an alleged attorney-client privilege is asserted).

The Florida Supreme Court and our sister districts agree. *See Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1068 (Fla. 2011); *Am. Home Assurance Co. v. Sebo*, 324 So. 3d 977, 982 (Fla. 2d DCA 2021); *Varela v. OLA Condo. Ass'n., Inc.*, 279 So. 3d 266, 267 (Fla. 3d DCA 2019); *Butler v. Harter*, 152 So. 3d 705, 714 (Fla. 1st DCA 2014); *Nationwide Mut. Fire Ins. Co. v. Hess*, 814 So. 2d 1240, 1243 (Fla. 5th DCA 2002).

The wives contend the trial court did not fail to conduct an *in camera* review because neither Akerman nor the husbands submitted documents for a review as verbally ordered by the trial court at the March 2021 hearing. We are not persuaded by the wives' argument. At the hearing, redacted records produced by Akerman in response to the subpoena were discussed. To resolve whether the redactions were proper, the trial court verbally ordered Akerman to submit unredacted documents to the court and further ordered Michelle to provide a list of names of people or entities mentioned in the documents that she contended would "raise a red flag" that the document was pertinent to the divorce proceeding. However, after alluding to the verbal order regarding the review process for the redactions,

the April 2021 order stated that, after the hearing, the parties resolved the redaction issue, and "[a]s such, the redaction pronouncement by this Court and the protocol for the Court to review the same is moot."[5] Thus, it appears that as of the date the April 2021 order was entered, there was no requirement or need for the submission of documents to conduct an *in camera* review.

*Conclusion*

The ICD Entities will suffer irreparable harm that cannot be remedied on appeal of a final order if they are compelled to produce attorney-client privileged materials pursuant to the First and Second Akerman Subpoenas or similar discovery requests served on the husbands. Having determined the trial court departed from the essential requirements of law in entering the January 24, 2022 orders, we grant the petitions and quash the orders. We remand the case to the trial court to conduct an *in camera* review of the disputed ICD Entities documents to consider whether:

(1) the communication would not have been made but for the contemplation of legal services;

(2) the employee making the communication did so at the direction of his or her superior;

(3) the superior made the request of the employee as part of the entity's effort to secure legal advice or services;

(4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties; and

(5) the communication is not disseminated beyond those persons who, because of the Entity's structure, need to know its contents.

---

[5] We also note that the wives' response to the petition does not assert the wives complied with the verbal order to supply the list of names which would "raise a red flag." We see no reason to fault one party with noncompliance with a verbal order when it is not clear the other party complied.

*See Deason,* 632 So. 2d at 1383. We also direct the trial court to delineate in a written order the scope of any waiver of the attorney-client privilege the trial court determines applicable during the proceedings on remand.[6]

*Petitions granted, orders quashed, and case remanded for further proceedings.*

LEVINE and ARTAU, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

---

[6] We note that on the same day the two orders on review were rendered, the ICD Entities filed a lengthy privilege log, which was not reviewed by the trial court prior to issuing the January 24, 2022 orders on review. We express no opinion regarding whether the January 24, 2022 privilege log is pertinent to the determination of the scope of any waiver of privilege.