CORRECTED OPINION
 

 KAHN, J.
 

 We deny respondent Shands Teaching Hospital & Clinic, Inc.’s (Shands) “Motion for Rehearing and for Rehearing En Banc.” We withdraw our original opinion dated July 20, 2010, and substitute this corrected opinion.
 

 Petitioners Michael and Stephanie Baldwin, a husband and wife, seek certiorari review of the circuit court’s December 2009 order denying their motion to compel a non-party, Shands, to produce “all records of adverse medical incidents in its possession” regarding Mr. Baldwin — including a Shands risk management incident report and a Shands peer review form — pursuant to article X, section 25(a) of the Florida Constitution (Amendment 7). The trial court denied petitioners’ supplemental motion to compel and/or motion for reconsideration. Because the requested documents are Shands’ records relating to an adverse medical incident, the trial court failed to comply with the requirements of Amendment 7. We grant the writ, quash the first paragraph of the order, and require Shands to produce all records of adverse medical incidents.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 This litigation commenced with the Baldwins’ medical negligence claim against respondent University of Florida Board of Trustees, a/k/a University of Florida (UF). The complaint alleges UF physicians negligently intubated 48-year-old Mr. Baldwin for general anesthesia before a scheduled appendectomy at Shands, causing a perforation that injured his hypopharynx with severe damage to his larynx and throat. Count One alleged medical malpractice, Count Two alleged loss of consortium, and Count Three alleged unjust enrichment. Shands has conceded that after Mr. Baldwin’s admission to the hospital for an emergent appendectomy, and during the process of providing him with a necessary airway for the necessary anesthesia, a 6-mm perforation of his hypopharynx occurred. At the hearing below, counsel for UF stated, without an objection, that both Drs. Larkins and Good, the two physicians present at the intubation, had testified they did not know when the injury occurred.
 

 Section 395.0197(1), Florida Statutes (2005), requires every licensed facility, “as a part of its administrative functions, [to] establish an internal risk management program” including, in subsection (l)(a), “investigation and analysis of the frequency and causes of general categories and specific types of adverse incidents to patients.” Petitioners moved to compel Shands to produce its risk management incident report and peer review record (which were identified in Shands’ privilege log) and any other records of adverse medical incidents involving Mr. Baldwin. Because Mr. Baldwin was under the effects of pre-anesthesia when the injury occurred and could not recall what happened, petitioners argued these records are the only accurate account of the injury, cannot be
 
 *121
 
 substituted, and thus are material to their medical negligence claim.
 

 Shands opposed the request on the ground that its own investigation concluded the incident did not involve negligence and was, therefore, not an “adverse medical incident” requiring disclosure of the records under Amendment 7. After a hearing, the trial court refused to require production of the two Shands documents. Petitioners now seek a writ of certiorari quashing the order and instructing Shands to produce the risk management incident report and peer review record. The question is whether an entity subject to Amendment 7 may avoid the dictate of the amendment by determining, through its own investigation, that the records sought do not cover an “adverse medical incident.”
 

 II. ANALYSIS
 

 A. Amendment 7
 

 The provision generally known as Amendment 7, adopted in 2004 by Florida’s electorate, states:
 

 In addition to any other similar rights provided herein or by general law, patients have a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident.
 

 Art. X, § 25(a), Fla. Const. Amendment 7 thus provides an avenue for patients to get access to records of a health care provider’s adverse medical incidents.
 
 See Fla. Hosp. Waterman, Inc. v. Buster,
 
 984 So.2d 478, 486 (Fla.2008). “ ‘[Hjealth care facility’ and ‘health care provider’ have the meaning given in general law related to a patient’s rights and responsibilities.” Art. X, § 25(c)(1), Fla. Const. Shands obviously is a health care facility.
 
 See, e.g.,
 
 §§ 381.028(3)(f) (stating “ ‘health care facility1 means a facility licensed under chapter 395”), 395.002(13) (defining “hospital”), and 395.002(17) (stating “ ‘licensed facility’ means a hospital”), Fla. Stat. (2005).
 

 The primary dispute concerns whether Shands’ documents relate to an “adverse medical incident” for purposes of Amendment 7. The amendment defines the term as follows:
 

 The phrase “adverse medical incident” means medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to or death of a patient, including, but not limited to, those incidents that are required by state or federal law to be reported to any governmental agency or body, and incidents that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committees.
 

 Art. X, § 25(c)(3), Fla. Const. The parties agree that while at Shands, Mr. Baldwin suffered an injury. If this event constitutes an “adverse medical incident,” then article X, section 25(a) of the Florida Constitution entitles Mr. Baldwin, who is a “patient” as defined in section 25(c)(2), to “have access to any records” under section 25(c)(4) made or received in the course of the hospital’s business relating to the incident.
 

 Construing together the provisions in Amendment 7, petitioners assert two independent grounds why the requested records must be produced. First, because Mr. Baldwin suffered a perforation of the throat during intubation by a UF anesthesiologist, the Baldwins characterize the injury caused by an “act” of a “health care provider” and, thus, an “adverse medical incident” under the language in the first part of the definition of “adverse medical
 
 *122
 
 incident.” Second, because the incident involving Mr. Baldwin was “reported to or reviewed by” Shands’ risk management and peer review entities, the two requested records are, say the Baldwins, records of an adverse medical incident pursuant to the language in the second part of the definition.
 

 B. Certiorari Jurisdiction
 

 The extraordinary remedy of certiorari relief from a pretrial order requires that petitioners demonstrate the order 1) caused material injury that will remain through the rest of the proceedings and cannot be corrected on appeal from final judgment and 2) departed from the essential requirements of law.
 
 See Martin-Johnson, Inc. v. Savage,
 
 509 So.2d 1097, 1100 (Fla.1987);
 
 Abbey v. Patrick,
 
 16 So.3d 1051, 1053 (Fla. 1st DCA 2009);
 
 Venus Labs., Inc. v. Katz,
 
 573 So.2d 993, 994 (Fla. 3d DCA 1991) (on reh’g en banc). Error in the denial of a discovery motion is generally corrective on review of the final judgment; as a jurisdictional threshold, certiorari will respond only to material, irreparable harm continuing through the rest of the proceedings. Some denials of discovery requests, however, cause irreparable injury, in the absence of any practicable way 1) to determine post-judgment the effect of the evidence on the outcome of the trial and 2) to obtain the information via other reasonable means.
 
 See Travelers Indem. Co. v. Hill,
 
 388 So.2d 648, 650 (Fla. 5th DCA 1980).
 

 Because the “material injury” and “irreparable effect” elements are jurisdictional, we must analyze them first before considering the merits.
 
 See Lakeland Reg’l Med. Ctr., Inc. v. Allen,
 
 944 So.2d 541, 543 (Fla. 2d DCA 2006);
 
 Parkway Bank v. Fort Myers Armature Works, Inc.,
 
 658 So.2d 646, 649 (Fla. 2d DCA 1995). In
 
 Hill,
 
 388 So.2d at 648, the petitioner sought certiorari review of the trial court’s denial of a motion to appoint a commissioner to take a deposition in Ohio. Respondent Hill, the plaintiff, had filed a complaint alleging that petitioner/insurer failed to pay a theft loss under an insurance policy issued by petitioner to respondent.
 
 See id.
 
 at 649. The trial court denied the motion without giving a reason or showing good cause. The petitioner asserted a departure from the essential requirements of law based on the denial of its very substantial right, the importance of the witness’ testimony as an essential element of the defense, and the lack of an adequate remedy upon direct appeal from a final judgment.
 
 See id.
 
 at 650. Granting the writ and quashing the order, the district court stated:
 

 It is difficult to understand how the denial of the right to take the testimony of an alleged material witness can be remedied on appeal since there would be no practical way to determine after judgment what the testimony would be or how it would affect the result. Cer-tiorari is the proper remedy here.
 

 Id.
 

 Relying upon
 
 Hill,
 
 petitioners argue the requested materials are clearly discoverable on two grounds under Amendment 7. First, they are material and go to the heart of the case, so that no other documents can be substituted for the ones in Shands’ custody. Second, no method would allow a determination post-judgment as to how the absence of these documents affected the outcome of the case.
 
 See also Queler v. Receivership of Cumberland Cas. & Sur. Co.,
 
 1 So.3d 1140, 1141 (Fla. 1st DCA 2009) (granting petition for writ of certiorari and quashing order granting motion to determine four subpoenas as null and void, where denial of discovery constituted irreparable harm not reviewable on direct appeal);
 
 Office of Att’y Gen. v. Millennium Commc’ns &
 
 
 *123
 

 Fulfillment, Inc.,
 
 800 So.2d 255, 257 (Fla. 3d DCA 2001) (granting certiorari review and quashing protective order that prevented petitioner from obtaining discovery, where irreparable injury occurred due to inability to determine post-judgment what the testimony would be or how it would affect result).
 

 We also find significant, on the question of jurisdiction, that petitioners claim the denial of a constitutional right guaranteed to them under Amendment 7. “[Cjertiorari is an appropriate remedy where constitutional rights are deprived or delayed during the pendency of a legal proceeding.”
 
 Williams v. Spears,
 
 719 So.2d 1236, 1239 (Fla. 1st DCA 1998). In
 
 Williams,
 
 we granted certiorari review in a challenge to the constitutionality of a statute authorizing a court to order grandparent visitation if the parents’ marriage has been dissolved. We reasoned that if the statute ultimately were found unconstitutional, petitioners would have suffered irreparable injury from the continuing inquiry into their decision-making process concerning their child, in violation of their broadly construed privacy rights.
 
 See id.
 
 at 1238;
 
 see also Belair v. Drew,
 
 770 So.2d 1164, 1167 (Fla.2000) (concluding that mother’s claim that statute authorizing grandparent visitation rights unconstitutionally violated mother’s privacy rights was subject to certiorari review, where trial court’s order temporarily granting grandmother visitation rights directly contravened mother’s constitutional rights, and any later determination that grandmother’s visitation request was not in child’s best interest could not undue the privacy violation).
 

 Courts have also granted certiorari relief where the trial court refused to compel disclosure of relevant evidence, the party seeking the information had a compelling interest, and the information could not be obtained by alternative means.
 
 See, e.g., Caroll Contracting, Inc. v. Edwards,
 
 528 So.2d 951 (Fla. 5th DCA 1988) (issuing writ of certiorari and quashing order refusing to allow petitioner/defendant, a highway contractor, to subpoena non-confidential road construction site photographs taken by an off-duty newspaper reporter at the accident scene, where photos were necessary, relevant and possibly critical in a lawsuit to prove the actual condition of the roadway at time of the accident, and trial court departed from essential requirements of law). Because the petitioners have satisfied the “material harm” and “irreparable effect” requirements, we have jurisdiction.
 

 C. Merits
 

 Next, we consider whether the trial court departed from the essential requirements of law. Amendment 7 broadly sets out a patient’s right of access to records made or received in the course of a hospital’s business and relating to any adverse medical incident.
 
 See
 
 Article X, § 25(a), Fla. Const. The Florida Supreme Court has recognized that this popularly adopted amendment affects, or even abrogates, statutes that previously exempted records of investigations, proceedings, and records of peer review panels from discovery in civil or administrative actions.
 
 See Buster,
 
 984 So.2d at 488-89;
 
 Advisory Op. to Att’y Gen. re: Patients’ Right to Know About Adverse Med. Incidents,
 
 880 So.2d 617, 620-21 (Fla.2004). “[0]ne of the primary purposes of the amendment is to provide a patient contemplating treatment by a medical provider access to that provider’s past history of adverse medical incidents.”
 
 Buster,
 
 984 So.2d at 489 n. 6. “[Ajmendment 7 is self-executing and does not require legislative enactment.”
 
 Id.
 
 at 492.
 

 
 *124
 
 A request for Amendment 7 materials differs significantly from an ordinary discovery request, the latter being subject to objections based on over-breadth, burdensomeness, or lack of relevance.
 
 See Columbia Hosp. Corp. of S. Broward v. Fain,
 
 16 So.3d 236, 240 (Fla. 4th DCA 2009) (on reh’g) (acknowledging that challenges to discovery of Amendment 7 materials based on undue burdensomeness, overbreadth, and lack of relevance were not proper grounds);
 
 Morton Plant Hosp. Ass’n, Inc. v. Shahbas,
 
 960 So.2d 820, 825-26 (Fla. 2d DCA 2007). Unlike the litigant engaging generally in discovery, the party seeking access to records pursuant to the amendment gains a foothold by satisfying the threshold showing of an adverse medical incident.
 
 See Buster’,
 
 984 So.2d at 489 n. 6;
 
 Fain,
 
 16 So.3d at 242;
 
 Shahbas,
 
 960 So.2d at 824-25.
 

 Respondents contend that petitioners failed to show the medical incident was adverse. In making this claim, however, respondents rely primarily on their own internal investigation conclusions that the care provided to Mr. Baldwin met the standard of care and did not involve an “adverse medical incident.” The Baldwins’ amended complaint alleged medical negligence by one or more of UF’s physicians that caused injury to a Shands patient, Mr. Baldwin. Respondents admit the medical incident was subject to Shands’ internal peer review and risk management procedures, the written results of which were the documents sought, but not disclosed. The documents before us do not detail Shands’ policy or criteria for initiating and conducting internal reviews, other than that 1) “an unusual outcome” will generate an incident report, and 2) when in doubt, the matter should be reported. Cristina Palacio, Shands’ senior associate general counsel, stated in her affidavit that, pursuant to section 395.0197, Florida Statutes (setting out guidelines for risk management, including incident reports), Shands has a standard procedure for reporting medical incidents. It receives thousands of incident reports annually, but not all are characterized by Shands as “adverse.” It is unclear from the documents before us exactly how Shands determines which incident reports are subject to peer review and risk management and which ones are not.
 

 Aside from statutory requirements, public policy favors a hospital’s conducting an internal investigation of medical incidents that allegedly caused injury, as Shands did after Mr. Baldwin’s injury. Respondents have cited no legal authority, however, nor have we found any, that would allow the health care provider subject to Amendment 7 to act as the final arbiter in determining whether a medical incident, here being both unintended and harmful to the patient, was “adverse” for purposes of complying with or denying a request for production of medical records of the incident. Such ultimately is the court’s decision upon a proper consideration of the nature of the records requested and the broad coverage of Amendment 7.
 

 Although the documents before us do not include petitioners’ presuit verified corroboration documents, which are a prerequisite for proceeding in a medical negligence action,
 
 see
 
 section 766.203(2), Florida Statutes (2005), petitioners’ amended complaint alleged they had complied “with all conditions precedent to this lawsuit as provided in Chapter 766, Florida Statutes.” Respondents do not assert otherwise. We see no reason not to conclude that a plaintiffs verified medical expert’s opinion on the viability of the medical negligence claim is one method of making a threshold showing of an adverse medical incident for purposes of Amendment 7. Liberal access to records of past adverse medical incidents, now accorded to a pro
 
 *125
 
 spective patient,
 
 see Buster,
 
 984 So.2d at 489 n. 6, would, under Shands’ view, be denied a current or former patient like Mr. Baldwin, who has met the chapter 766 presuit notice requirements for a medical malpractice claim and has, without dispute, suffered a serious injury, upon the medical provider’s sole determination. Such would not comport with the intent of Amendment 7.
 

 Also supporting petitioners’ claim of access to the records, we note that each of the two UF anesthesiologists who treated Mr. Baldwin around the time of the incident believed the other was performing the nasal intubation when this injury occurred. Neither physician claimed to know when the perforation occurred. One would easily conclude, then, that Shands’ risk management incident report and peer review record will provide material, and previously unknown, information relating to the medical negligence claim.
 

 To the extent respondents seek to restrict the definition of an adverse medical incident to acts of negligence alone, we note Amendment 7 expressly includes “medical negligence, intentional misconduct, and any other act, neglect, or default of a health care facility or health care provider that caused or could have caused injury to ... a patient.” Art. X, § 25(c)(3), Fla. Const.;
 
 see W. Fla. Reg’l Med. Ctr., Inc. v. See,
 
 18 So.3d 676, 690 (Fla. 1st DCA 2009),
 
 rev. granted,
 
 Case No. SC09-1997 (Fla. Mar. 29, 2010). Accordingly, “[W]e interpret the phrase ‘adverse medical incident’ as a specific incident involving a specific patient that caused or could have caused injury to or the death of that patient.... An adverse medical incident may be a negligent act or omission, as the definition indicates, but the act or omission must be connected with a patient and must be the cause or near-cause of an injury or death.”
 
 Id.,
 
 18 So.3d at 690. If Amendment 7 were intended to construe adverse medical incidents to mean only “medical negligence,” as respondents suggest, then subsection (e)(3) would not include the additional language dealing with “intentional misconduct” and “any other act, neglect, or default of a health care facility or health care provider” that caused or could have caused injury.
 
 See id.; Shahbas,
 
 960 So.2d at 827 (denying certiorari relief to the extent trial court ordered discovery of medical records relating to adverse medical incidents, and granting writ to the extent order required discovery of privileged records that did not contain information about such medical incidents).
 

 The Baldwins have made a showing that the act or acts of a health care facility or provider caused or could have caused injury or death to a patient. They have also demonstrated the incident was reported to and reviewed under Shands’ peer review and risk management procedures. Accordingly, the trial court overlooked protected constitutional rights and departed from the essential requirements of law in denying the motion to compel production of the two records. The writ should issue.
 
 See Giacalone v. Helen Ellis Mem. Hosp. Found., Inc.,
 
 8 So.3d 1232, 1234-36 (Fla. 2d DCA 2009) (concluding that order denying petitioner/patient’s motion to compel discovery of information, directly relevant to petitioner’s defenses or reasonably calculated to lead to discovery of admissible evidence, departed from essential requirements of law and caused material injury without an adequate remedy on direct appeal, such that certiorari relief was proper in action by respondent/hospital to recover unpaid charges);
 
 Ruiz v. Steiner,
 
 599 So.2d 196, 197-98 (Fla. 3d DCA 1992) (granting writ and quashing order denying discovery from physicians regarding their meeting to dis
 
 *126
 
 cuss autopsy report on petitioner’s husband, inasmuch as denying petitioner an opportunity to question physicians would cause irreparable injury that could not be remedied on direct appeal, absent any practical way to determine post-judgment what the physicians’ testimony would have been or how it would have affected the outcome).
 

 We GRANT the petition, QUASH that part of the order denying the motion to compel production of the two requested Shands records of the adverse medical incident, and REMAND with instructions to the trial court to order Shands to produce all records of adverse medical incidents.
 

 MARSTILLER and ROWE, JJ., concur.