LEWIS, C.J.
Petitioner, Lender Processing Services, Inc., petitions this Court- for a writ of certiorari and argues that the trial court departed from the essential requirements of the law in overruling its assertions of attorney-client privilege as to questions posed to two of its witnesses during the hearing addressing the motion to enforce settlement agreement filed , by Respondent, Arch Insurance Company, and Petitioner’s motion, to strike Respondent’s motion to enforce.. For the reasons that follow, we deny the certiorari petition.
In May 2012, Petitioner, a provider at the time of mortgage processing, loan servicing, and default management services to the mortgage lending industry, filed its First-Amended Complaint against several insurance companies, including Respondent. In the “insurance coverage dispute,” Petitioner sought “enforcement of the defendants’ obligations under a directors and officers liability insurance program.” Petitioner alleged that Respondent, the primary insurer, “unjustifiably has denied that it has any obligation to pay the substantial costs that [Petitioner] has incurred in connection with defending against two putative class actions alleging securities law violations due to purported financial disclosure deficiencies, and two companion derivative actions — ” Count I was a declaratory judgment action against Respondent wherein Petitioner asserted that Respondent was contractually obligated to indemnify it for “Loss, including Defense Costs” incurred in connection with the underlying claims. A mediation in the underlying suits against Petitioner occurred in January 2013.
In July 2013, Respondent filed a motion to enforce a settlement agreement that it allegedly entered into with Petitioner in the coverage lawsuit. According to' Respondent, the pax-ties reached a settlement on January 30, 2013, “agreeing upon the settlement’s material terms which included [a certain payment amount by Respondent to Petitioner] in exchange for [Petitioner’s] agreement to forego any future rights [it] might otherwise have to demand further amounts from [Respondent] under the Arch Policy.” Respondent asserted that despite the fact that the parties’ explicit agreement was memorialized in email correspondence, Petitioner had “attempted to unilaterally and materially alter the terms of the settlement to which it already had agreed” and “in a post hoc effort to secure more favorable consideration ... [wa]s only willing to provide [Respondent] with a substantially more ’ limited claim release.” Respondent further asserted that Petitioner’s in-house counsel, Robert Pinder, was involved in the settlement negotiations and that Petitioner could not in good faith uni *1055 laterally alter the terms of the agreed-upon settlement in its favor.
Respondent attached several emails to its motion to enforce. A January 10, 2013, email from Petitioner’s counsel in the coverage lawsuit to Respondent’s counsel “constitute[d] a demand- [from Petitioner] for contribution from [Respondent], as well as a settlement demand, the payment of which would satisfy [Respondent’s] obligation to contribute.” A January 30, 2013, email from Respondent’s counsel to Petitioner’s counsel in the coverage lawsuit set forth in part, “I’m writing to respond to Bob Pinder’s settlement proposal conveyed in our call yesterday afternoon, which I have forwarded to [Respondent].” After conveying the proposed settlement amount, Respondent’s counsel wrote, “[Respondent] appreciates Bob’s willingness to conclude the process of incremental moves and to define the parties’ respective endpoints.” Respondent then proposed a lesser settlement, amount. In a subsequent January 30, 2013, email, Petitioner’s counsel in the coverage lawsuit stated that Mr. Pinder, whom he had spoken with, “very much appreciates the spirit with which [Respondent] made the' offer and your prompt response.” Petitioner rejected the settlement amount proposed by Respondent and proposed a greater amount. Later that day, Respondent’s counsel replied via email, stating in part, “[Respondent] has asked me to advise you that [Respondent] accepts this offer, and is prepared to move on to the settlement documentation step.” Respondent “appreciate^] Bob Pinder’s constructive and thoughtful contributions to the settlement negotiation process.” Respondent’s draft agreement included signature lines for itself; Petitioner, and Petitioner’s officers and directors. In a subsequent email, Petitioner’s counsel in the coverage lawsuit wrote that Petitioner “will represent it has authority to enter into the settlement on behalf of the individual insureds [officers and directors], so only [Petitioner] will be signing.” Petitioner’s draft settlement agreement included a signature line for Petitioner “on behalf of itself and on behalf’ of its officers and directors. The signature' lines for the officers and directors that were included in Respondent’s draft were crossed through.
In September 2013, Petitioner moved to strike Respondent’s motion to enforce. In November 2013, Petitioner filed a written opposition to the motion to enforce. Therein, Petitioner argued that without express authority from its officers and' directors to release their coverage under Respondent’s policy, the “purported agreement [Respondent] seeks to enforce could not have' been formed” and that Respondent “did not assert, and could not in good faith have asserted, that [Petitioner’s] directors and officers participated in the negotiations with [Respondent] and authorized [Petitioner] or [its] counsel to agree to a settlement that included a policy release.” It further contended:
The individual Insured Persons were not part of the negotiations between [Petitioner] and [Respondent]; they did not interact with [Respondent’s] counsel and thus could not have “given the appearance of an agency relationship” with [Petitioner’s] counsel. [Petitioner] never represented that it was negotiating on their behalf, and [Respondent] had actual notice through its own Policy that [Petitioner] could not bind these Insured Persons....
[Respondent] .is trying to conco.ct an agreement with [Petitioner]. [Respondent’s] concoction is sheer fiction; it also is a legal and factual impossibility because [Petitioner] and its counsel were not authorized to release the rights of [Petitioner’s] directors and officers under [Respondent’s] policy.- Accordingly, [Respondent’s] Motion should be denied.
*1056 In support of its motion to strike and written opposition, Petitioner relied upon Robert Pinder’s November 2013 affidavit wherein he represented that he “had authority only to resolve the claims brought by the plaintiff for the prospective class” in one of the underlying suits, that he had “never ... represented to [Respondent] or any of its counsel that either [Petitioner] or [he] had the authority to settle the Coverage Lawsuit on behalf of any of the officers or directors of [Petitioner], who are named as defendants ..., nor [had he] authorized [Petitioner’s] outside counsel to make such a representation to [Respondent] or its counsel.” Mr. Pinder also averred that he “never ... represented to [Respondent] or its counsel that the Insured Persons would release their rights to coverage by the insurance policy issued by [Respondent] to [Petitioner] for the 2010-2011 term in order to settle the Coverage Lawsuit, nor [had he] authorized [Petitioner’s] outside counsel to make such a representation to [Respondent] or its counsel.” Mr. Pinder declared that prior to February 1, 2013, “[Petitioner], its directors and its officers had not determined on what terms they would be willing to settle the Coverage Lawsuit, and had not authorized [him] to settle that suit on their behalf.”
During the hearing on the parties’ motions, Petitioner called Kimberly Loverich, the vice-president of risk management for Fidelity National Financial, the entity which, according to Loverich, had purchased Petitioner. After discussing director and officer liability coverage, Ms. Loverich was asked on cross-examination whether she was involved in any settlement negotiations between the parties, to which she replied, “Just with Bob Pender [sic] and with the broker_” Respondent’s counsel then asked, “Did you have any conversations with Bob Pender [sic] in January or February of 2013 or at any time in the first quarter of 2013, January, February, March, concerning settlement of the coverage action of this lawsuit with the [officers and directors]? ” Petitioner’s counsel objected, stating in part, “I have no problem with the witness answering whether she did or [did] not have conversations. I would object that the conversations would constitute attorney/client communication and would assert the company’s attorney/client privilege ....” In response, Respondent’s counsel argued that Mr. Pinder had submitted affidavits in the case concerning the issue of whether there was authorization to settle the coverage lawsuit. Petitioner’s counsel asserted that while Pinder’s conversations with the officers and directors would not be covered because “[t]hey’re not his clients,” the question asked to Ms. Loverich pertained to a communication with Mr. Pinder, an “in-house lawyer.” After Respondent’s counsel contended that Petitioner had “opened the door about what Mr. Pender [sic] had authority to do and not do,” the trial court held the objection under abeyance.
Robert Pinder subsequently testified that as Petitioner’s chief litigation officer, he managed Petitioner’s litigation in the underlying suits as well as the coverage lawsuit against Respondent. When asked if he was personally involved in the “settlement discussions” during a January 2013 phone call, Pinder replied in part, “There were discussions amongst myself and counsel throughout.” When asked if he had spoken to any of Petitioner’s “executives” at the time of the call, he replied, “No. I went through ... [Petitioner’s general counsel].” When asked if he had spoken with any of Petitioner’s officers and directors between the mediation and March 8, 2013, about the substance of the lawsuits, he replied, “No.” He gave the same response when asked if Respondent’s *1057 counsel asked him whether he had authority to speak for the officers and directors. When asked if he said anything during the call as to whether he had any authority to speak for the officers and directors, he responded, “No. To the best of my recollection, all we spoke about was money.”
Mr. Pinder was later asked on cross-examination, “And you informed [Petitioner’s general counsel] of what had occurred at the mediation?” Petitioner’s counsel objected, arguing “attorney/client communication.” After the trial court stated its concerns regarding “real questionable attorney/client issues,” Respondent’s counsel withdrew the question, and the court stated, “He’s "withdrawing the question. We’ve taken that off the table.” Respondent’s counsel then asked Mr. Pin-der, “After that mediation, did you have conversations with [Petitioner’s counsel] about the settlement communications between him and [Respondent’s counsel]?’’ Petitioner’s counsel again objected on the basis of attorney-client privilege. Pinder affirmatively responded when later asked if he had conversations with Petitioner’s counsel concerning the settlement discussions. Respondent’s counsel then asked, “And did you receive e-mail correspondence from [Petitioner’s counsel] that far-warded to you the correspondence from ,.. [Respondent’s] counsel, concerning the negotiations?” Petitioner’s counsel objected on the basis of attorney-client privilege. The trial court overruled the objection “as long as you’re not getting into the substance of the e-mails.” When asked if he communicated back to Petitioner’s counsel after he had received the negotiation emails, Mr. Pinder replied, “I communicated with [counsel] routinely concerning the negotiations.” Respondent’s counsel later asked, “And after that date, do you recall raising the question of the individual [officers and directors], with [Petitioner’s counsel]?” In response to Petitioner’s counsel’s attorney-client privilege objection, Respondent’s counsel argued that the subject of Mr. Pinder’s authority was clearly at issue. The trial court held the objection in abeyance. When asked his legal opinion as to why Petitioner waited until November 2013 to argue that its officers and directors did not approve of the settlement, Mr. Pinder replied, “I don’t recall.” Respondent’s counsel then asked, “Do you remember telling anybody that [Petitioner] will represent it has authority to enter into the settlement on behalf of the individual insured so only [Petitioner] will be signing?” Petitioner’s counsel again objected on the basis of attorney-client privilege.
The hearing was continued, and Respondent filed a written motion in, support of its right to cross-examine Petitioner’s witnesses. Respondent argued that a party cannot inject an issue into litigation and then preclude inquiry into that issue by asserting the protection of the attorney-client privilege; It further argued that while the communications at issue may have been privileged at on¿ point, “once [Petitioner] raised them as a basis to avoid settlement, any privilege as to the subject matter of those communications, as well as the communications themselves, was waived.” Petitioner filed a memorandum in opposition, asserting in part that the attorney-client privilege had not been waived.
During the continuation of the hearing, the trial court informed the parties that it was overruling each of the attorney-client privilege objections and would allow for the cross-examination of Petitioner’s witnesses. Following the testimony of Respondent’s attorney who was involved in the negotiations in the coverage lawsuit, the trial court granted Petitioner’s motion to stay. This proceeding followed.
*1058 It is well-settled that in order to obtain a writ of certiorari, a petitioner must establish “ ‘(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.’ ” Reeves v. Fleetwood Homes of Fla., Inc., 889 So.2d 812, 822 (Fla.2004) (citation omitted). A ruling constitutes a departure from the essential requirements of the law when it amounts to a violation of a clearly established principle of law resulting in a miscarriage of justice. Heart Surgery Ctr. v. Thomas J. Bixler, II, M.D., P.A, 128 So.3d 169, 173 (Fla. 1st DCA 2013). Because the material injury and irreparable effect elements are jurisdictional, those elements must be considered first before addressing the merits of the argument. Baldwin v. Shands Teaching Hosp. & Clinics, Inc., 45 So.3d 118, 122 (Fla. 1st DCA 2010).
While Respondent contends that Petitioner has failed to establish material injury or irreparable harm that cannot be corrected on appeal, the discovery of information that is protected by a privilege “ ‘may reasonably cause material injury of an irreparable nature.’ ” Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995) (citation omitted).,, Certiorari is appropriate in cases which allow discovery of privileged information because once such information is disclosed, there is “no remedy for the destruction of the privilege available on direct appeal.” Coates v. Akerman, Senterfitt & Eidson, P.A, 940 So.2d 504, 506 (Fla. 2d DCA 2006). As we have explained, “[I]t appears that if there has been a departure from the essential requirements of law regarding either alleged privilege [attorney-client or work-product], the harm is indeed irreparable.” Lacaretta Rest. v. Zepeda, 115 So.3d 1091, 1092-93 (Fla. 1st DCA 2013).
Turning to the merits of the issue, Petitioner contends that the trial court’s overruling of its attorney-client privilege objections constituted a departure from the essential requirements of the law. Section 90.502, Florida Statutes, which is entitled “Lawyer-client privilege,” provides in part:
(1) For purposes of this section:
[[Image here]]
(c) A communication between lawyer and client is “confidential” if it is not intended tó be disclosed'to third persons other than:
1. Those to whom disclosure is in furtherance of the rendition of .legal services to the client.
2. Those.reasonably necessary.for the transmission of the communication.
(2) A client has a privilege- to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.
(3) The privilege may be claimed by:
(a) The client.
[[Image here]]
(e) The lawyer, but only on behalf of the client. The lawyer’s authority to claim the privilege is presumed in the absence of contrary evidence.
(4) There is no lawyer-client privilege under this section when:
[[Image here]]
(c) A communication is relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer, arising from the lawyer-client relationship.
One of the chief -purposes of the attorney-client privilege is to encourage ‘“clients to disclose their circumstances fully to lawyers whose assistance they seek *1059 in ascertaining their legal rights and obligations.’ ” Anderson Columbia v. Brown, 902 So.2d 838, 841 (Fla. 1st DCA 2005) (citation omitted). The burden of establishing the attorney-client privilege rests on the party claiming the privilege. S. Bell Tel. & Tel. Co. v. Deason, 632 So.2d 1377, 1383 (Fla.1994). The supreme court has set forth the following criteria in determining whether a corporation’s communications are protected by the attorney-client privilege:
(1) the communication would not have been made but for the contemplation of legal services; . -
(2) the employee making the communication did so at the direction of his or her corporate superior;
(3) the superior made the request of the employee as part of the corporation’s effort to secure legal advice or services;
(4) the content of the communication relates to the legal services being rendered, and the subject matter, of the communication is within the scope of the employee’s.'duties;
(5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

Id.

As Petitioner points out, in Laearetta Restaurant, we agreed with the petitioner in that case that a note by its insurance adjustor to memorialize a meeting with in-house counsel and a second note made by in-house counsel herself were protected by the attorney-client privilege because both notes “clearly constitute or memorialize communication from the attorney to the [petitioner] in the rendition of legal services.” 115 So.3d at 1092-93. Similarly, in Ford Motor Co. v. Hall-Edwards, 997 So.2d 1148, 1153 (Fla. 3d DCA 2008), the Third District explained that the attorney-client privilege extends to “communications between employees and in-house general counsel, whether oral, contained in documents or contained in a database.” In that case, the Third District noted that the “LMMS database” at issue was used as a “mechanism for [the petitioner’s] inside and outside counsel to communicate among each other, exchanging thoughts, opinions, strategies, mental impressions and advice regarding the defense" of lawsuits and claims.” Id. The Third District held that the database, which contained communications that were made solely for the purpose of, and in furtherance of, the rendition of legal services to the petitioner, qualified as confidential communications that were immune from discovery under the attorney-client privilege. Id.; see also Progressive Am. Ins. Co. v. Lanier, 800 So.2d 689, 690 (Fla. 1st DCA 2001) (holding that certain pages of the petitioner’s privilege log, which consisted mainly of communications to and from the petitioner’s attorneys and billing statements, were absolutely privileged as attorney-client communications).
Here, Petitioner’s counsel objected to six questions, one of which was posed to Ms. Loverich, and five of which were posed to attorney Pinder.[1] We agree with Petitioner that the information sought by Respondent is the type of information that is protected by the attorney-client privilege. The issue presented in this case is whether the privilege was waived by Petitioner given its argument that it and “its counsel were not authorized to release the rights of [its] directors and officers under [Respondent’s] policy” and its reliance upon *1060 attorney Pinder’s affidavit in support of its motion to strike and in opposition to Respondent’s motion to enforce.
While all personal privileges may be waived by the client, the waiver of the attorney-client privilege is not favored in Florida. Coates, 940 So.2d at 508. A party does not waive the privilege merely by bringing a lawsuit or defending against one. Id. Rather, waiver of the privilege occurs when a party “ ‘raises a claim that will necessarily require proof by way of a privileged communication.’” Id. (citation omitted) (emphasis in original); see also Lee v. Progressive Express Ins. Co., 909 So.2d 475, 477 (Fla. 4th DCA 2005) (“[I]f proof of the claim would require evidence of the privileged matter, the privileged matter is discoverable.”). When the attorney-client privilege is waived regarding a certain matter, the waiver is limited to communications on that same matter. Courville v. Promedco of Sw. Fla., Inc., 743 So.2d 41, 42 (Fla. 2d DCA 1999).
In support of its argument that no waiver of the attorney-client privilege occurred, Petitioner relies upon Coates. There, the Second District granted the petition for writ of certiorari challenging the order finding certain documents discoverable and explained that in the underlying litigation, the petitioner clients sued the respondent attorneys and others in connection with a proprietary tax savings plan and the establishment of a joint venture. 940 So.2d at 505-06. According to the complaint, some of the petitioner clients retained the respondent law firm to provide ongoing legal services relating to various personal and business matters. Id. The petitioner clients subsequently asserted various claims, including a claim for legal malpractice, against the Akerman firm and two of its attorneys with respect to their legal advice. Id. The respondents denied any negligence, raised various affirmative defenses, and alleged that the petitioner clients’ own actions or the actions of others caused the clients’ damages. Id. During discovery, the respondent lawyers sought production of several documents “relating to any advice (legal or otherwise) that [the clients] received from individuals or entities other than [the lawyers] concerning the Plan and/or the ELC Joint Venture.” Id. at 507. The petitioner clients produced some documents but asserted the attorney-client privilege as to others. Id. The respondent attorneys moved to compel production of the sought-after documents, arguing that the petitioner clients put the advice they received from any other professionals at issue and that the application of the clients’ asserted privileges would “deny [the lawyers] access to information vital to their defense-particularly their defense as to causation.” Id. The respondent attorneys also argued that the petitioner clients waived the attorney-client privilege as to “these communications” under the “at issue” doctrine and the “selective disclosure” doctrine. Id.
After noting that a party does not waive the attorney-client privilege merely by bringing or defending a lawsuit, the Second District reasoned that because the petitioners’ claims against the respondent lawyers were based upon the legal advice they gave to the clients, the petitioners waived the privilege with respect to their communications with the respondents as the clients “must necessarily present evidence of these communications at trial to prove their claims.” Id. at 508. The Second District determined, however, that the petitioner clients had not placed at issue their communications with other professionals by suing the respondent lawyers. Id. Rather, the respondents, “by asserting a defense based upon the clients’ alleged communications with others, have sought to place such communications at issue.” *1061 Id. The Second District found that the respondents “had not shown that the clients must necessarily offer the disputed documents at trial to prove their claims. Instead, the [respondents] seek the documents in the hope that they will contain information helpful to the [respondents’] defense or third-party claims.” Id. The Second District determined that the respondents could not, by their assertion of a comparative fault defense, create a waiver of the petitioner clients’ attorney-client privilege with respect to the clients’ other counsel. Id. The court explained, “The possibility that the disputed documents may be relevant to or may assist the [respondents] in their defense or in their third-party claims, or may perhaps assist in the [respondents’] efforts to impeach the clients, does not create a waiver of the privilege.” Id. at 509; see also Markel Am. Ins. Co. v. Baker, 152 So.3d 86, 91-92 (Fla. 5th DCA 2014) (rejecting, the trial court’s finding that the attorney’s statements were voluntary disclosures of privileged information constituting a waiver of attorney-client privilege because the “statements did not refer to any communications between [the petitioner’s] counsel and its corporate representatives” but was instead a discussion of the attorney’s interpretation and understanding of the agreement at issue and the legal research performed by an associate to ascertain whether discovery limitations could be incorporated into the agreements); Lee, 909 So.2d at 475-77 (holding that the petitioner, the plaintiff in a bad faith action against the respondent insurer, did not waive the attorney-client privilege by indicating that the timing of his demand to the insurer, the amount of the demand, and the rejection of the respondent’s settlement offer were decided by his attorney because the motives of the petitioner and his attorney were not elements the petitioner had to prove to establish a bad faith claim and because the petitioner gave limited responses during his deposition and did not disclose any specific discussions or the substance of any communications he had with his attorney); Choice Rest. Acquisition Ltd. v. Whitley, Inc., 816 So.2d 1165, 1166-67 (Fla. 4th DCA 2002) (rejecting the respondent’s argument that the petitioner waived the accountant-client privilege when the manager of the firm hired by the petitioner testified that the due diligence for which his firm had been hired by the petitioner was never completed and reasoning that the respondent’s desire to question the manager was not to prove the petitioner’s claim of fraud but to defend against it by gathering evidence it hoped would support a defense to the fraud claim).
In contrast to the foregoing cases, in First Southern Baptist Church of Mandarin, Florida v. First National Bank of Amarillo, 610 So.2d 452, 458-54 (Fla. 1st DCA 1992), we determined that the attorney-client privilege had been waived. There, the petitioners challenged the trial court’s order compelling discovery in a mortgage foreclosure suit and argued that the attorney-client privilege insulated certain information from discovery. Id. at 453. We explained that in response to the foreclosure suit, the petitioners denied that they had defaulted, denied that they owed the amount claimed, and asserted nine affirmative defenses, including allegations that the respondents’ predecessor-in-interest had fraudulently induced them into executing the trust indenture and mortgage by misrepresenting that it was capable of selling bonds, receiving and administering trust proceeds, and in paying over the proceeds from the bond sales to the church. Id. In the certiorari proceeding, the petitioners argued that they did not, simply by raising affirmative defenses, waive the privilege of maintaining the pri *1062 vacy of their communications with their lawyer. Id. at 454. We concluded,- however, that the petitioners “did waive the privilege in regard to communications and documents relating to the bond transaction, because they affirmatively alleged that respondents’ predecessor in interest had defrauded; them during the course of such transaction.” Id. In reaching our conclusion, we noted that if a “party ‘has injected into the litigation issues going to the very heart of the litigation,’ such party cannot avoid discovery into such issues by invoking the attorney-client privilege.” Id. (citation omitted) (emphasis in original). .
As to Petitioner’s reliance upon Coates, the facts of this ease are distinguishable. This was not a situation where -Respondent questioned the authority of Petitioner or its counsel to enter into the purported settlement agreement in support of its motion to enforce or in opposition to Petitioner’s motion'to strike. Instead, similar to the situation in First Southern Baptist Church, Petitioner, who is the party claiming, the privilege, injected into the proceedings the subject at issue — authority to settle on behalf of its officers and directors. In its written opposition to Respondent’s motion to enforce, Petitioner argued that Respondent could not prove that Petitioner had a “clear and unequivocal grant of authority”' from the individual insureds to enter into a settlement agreement and provide a policy release. Petitioner further asserted - that Respondent had presented no evidence that Petitioner could bind the - individual insureds to a settlement and that Petitioner never represented that it was negotiating on the individual insureds’ behalf. Petitioner further argued that “[it] and its counsel were not authorized to release the rights of [Petitioner’s] directors and officers under [Respondent’s] policy.” Mr. Pinder’s affidavit, which Petitioner relied upon below, also put at issue Petitioner’s authority and the authority of its counsel to enter into a settlement on behalf of Petitioner’s officers and directors.
We find that the facts of this case are more akin to the cases cited by Respondent, including Estate of Tobias v. Barnaby, 804 So.2d 553 (Fla. 3d DCA 2002). There, the appellant, the personal representative of an estate,, appealed an order enforcing settlement and dismissing the action with respect to the appellee. Id. at 554. The Third District explained that the appellee had filed a motion to enforce a settlement agreement between it and the appellant. Id. The motion asserted that despite reaching a settlement agreement, the appellant had refused to execute the settlement documents. Id. The appellant’s position was that she had not authorized the settlement. Id. After an evidentiary hearing, the trial court ruled that there was an enforceable settlement, and the Third District affirmed. Id. The appellant argued on appeal that the trial court should.not have allowed her to waive the attorney-client privilege with regard to the question of whether she had given her counsel authority to settle. Id. at 554-55. In finding no merit to this argument, the Third District set forth:
The [appellant] testified at some length at the hearing regarding the settlement negotiations. [She] stated that she had told her counsel to negotiate the best deal that he could come up with, and that she would consider it. She denied actually giving her counsel authority to settle.
[[Image here]]
,.. The [appellant] was the holder of the privilege and could waive it.
The more important point is that the [appellant] had already waived the privilege as a matter of law by making the assertion that her counsel had settled *1063 the case without authority._ Writing about this circumstance, the late Judge Letts said, “No court should countenance an announced settlement between counsel foEowed by escape therefrom, if one side arbitrarily reneges and then seals’ his counsel’s lips by invoking the attorney-client privilege.” Hamilton v. Hamilton Steel Corp., 409 So.2d 1111, 1114 (Fla. 4th DCA 1982).
Judge Letts explained that this follows from the terms of the Evidence Code. The relevant provision
states: “there is no lawyer-client privilege under this section when communication is relevant to an issue of breach of duty by the lawyer to his client....” Such a breach of duty is exactly what is at issue here i.e. did the lawyer have the authority and assent of ah of his clients to enter into the settlement or did he breach his duty as to some of them.
[[Image here]]
We thus conclude that there was a waiver of the privilege on the issue of authority to settle, as a matter of law.
Id. at 555 (emphasis added).
Respondent also relies upon Baratta v. Homeland Housewares, LLC, 242 F.R.D. 641 (S.D.Fla.2007). There, the district court denied the plaintiffs motion for a protective order. Id. at 642. At issue was whether the plaintiff’s attorney, Mr. Martin, had settlement authority in the case when he reached a settlement with the defendant’s counsel. Id. The district court noted that the plaintiff filed a declaration expressly denying that he had assented to the settlement negotiated by attorney Martin. Id. at 642-43. The district court set forth, “Upon filing the declaration, [the plaintiff] waived the attorney-client privilege with regard to his communications with his attorneys regarding settlement.” Id. at 643. The court noted that there were allegations made in the deposition testimony of both the plaintiff and attorney Martin that the plaintiffs patent attorney, Mr. Greenberg, was fully advised of the progress of the settlement discussions by both the plaintiff and Martin. Id. The district court wrote, “Clearly - then Mr. Greenberg is likely to possess relevant information regarding whether [the plaintiff] assented, to the parties’ settlement and/or whether attorney Martin was granted ‘clear and unequivocal’ settlement authority by [the plaintiff].” Id. The court concluded that the attorney-client privilege had been waived’ by the actions of the plaintiff “through issue injection.” Id.) see also Carpenter v. Mohawk Indus., Inc., No. 4:07-CV-0049-HLM, 2007 WL 5971741, at *1, *13 (N.D.G& Oct. 1, 2007) (noting that the plaintiff filed a lawsuit alleging that, he was wrongly fired by the defendant and that responses filed by the defendant set forth that as part of its investigation in the case, its outside counsel interviewed the plaintiff and concluding that “[b]y making those representations, Defendant Mohawk placed the actions of Attorney Morillo [its counsel] in issue” and that “[i]n fairness, evaluation of those representations will require an examination of otherwise-protected communications between Attorney MoriEo and Plaintiff and between Attorney Morillo and Defendant Mohawk’s personnel”); Am. States Ins. Co. v. Kransco, 641 So.2d 175, 177 (Fla. 5th DCA 1994) (noting that the issue in the contribution cross-claim was- whether the petitioner insurer secured- a release in good faith or bad faith and explaining that if the petitioner attempted to affirmatively show good faith by disclosing its basis for settlement, it may waive its privileges); Salsman v. Brown, 51 A.3d 892, 893-95 (Pa.Super.Ct.2012) (noting that the appellants appealed from an order granting a petition to enforce settlement agreement filed by the appellees and that one of the appeEants testified below that his attorney had not been authorized to send an offer- *1064 to-settle letter and holding that the argument “that Attorney Beirne was not authorized to send this settlement letter, resulted in an exception to the attorney client privilege because the [appellants] are questioning the integrity and professionalism” of the attorney).
Petitioner cites both Estate of Tobias and Bamaby in a footnote in its certiorari petition and argues that in contrast to those cases, it “contends that there was no agreement between [Respondent] and [Petitioner] or [Respondent] and [Petitioner’s] individually insured directors and officers on the material terms of a settlement.” Petitioner asserts that unlike the proponents of the attorney-client privilege in both those cases, it did not inject the content of its privileged communications with its counsel into its defense of the motion to enforce. Petitioner’s attempt at distinguishing the cases is unconvincing. By declaring that they did not agree to the settlements at issue, the parties in both cited cases obviously did not wish to be bound by the settlements. Here, Petitioner opposed the motion to enforce what Respondent claimed was a settlement agreement by arguing in part that it and “its counsel were not authorized to release the rights of [Petitioner’s] directors and officers under [Respondent’s] policy.” By doing so, Petitioner injected the issue of authority to settle into this case.
Moreover, Petitioner relied on attorney Pinder’s affidavit, notwithstanding the fact that he was involved in the settlement negotiations. By arguing a lack of authority to settle and by relying upon attorney Pinder’s representations while at the same time arguing that any communications Mr. Pinder may have had concerning the settlement and individual insureds were privileged, Petitioner attempted to limit Respondent’s ability to advocate in favor of its motion to enforce. However, a party “may not use the [attorney-client] privilege to prejudice his opponent’s case or to disclose some selected communications for self-serving purposes.” U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir.1991). The privilege may be “implicitly ... waived when defendant asserts a claim that in fairness requires examination of protected communications.” Id. (holding that the waiver principle was applicable in the case before it as to the appellee’s testimony that he thought his actions were legal because that testimony put his knowledge of the law and the basis for his understanding of what securities law required at issue and because his conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and intent). If an insurer who wants to defend against a claim of bad faith may waive privileges by attempting to show good faith on its part, see Am. States Ins. Co., 641 So.2d at 177, we see no reason why a corporation that wishes to defend against allegations of a settlement agreement by claiming lack of authority to bind its officers and directors and by relying on its in-house counsel’s representations does not waive its attorney-client privilege as to the issue of authority to settle.
Based upon the foregoing, we agree with Respondent that Petitioner waived its attorney-client privilege as to the questions at issue. As such, we reject Petitioner’s argument that the trial court departed from the essential requirements of law in overruling its objections and, therefore, deny the certiorari petition.
DENIED.
MARSTILLER and OSTERHAUS, JJ., concur.

. We note that the' question posed to Mr. Pinder of whether he informed Petitioner’s general counsel of what had occurred at the mediation was withdrawn by Respondent and, as the court noted, "taken ... off the table.”